## Docket No. 24-6443

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

E.V.A., by and through her guardian Stephanie Allen,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

EPIC GAMES INC.,

*Defendant-Appellant.*

---

*Appeal from a Decision of the United States District Court for the Southern District of California,*
*No. 3:24-cv-00517-RSH-AHG · Honorable Robert Steven Huie*

# OPENING BRIEF OF APPELLANT EPIC GAMES, INC.

JEFFREY S. JACOBSON
FAEGRE DRINKER BIDDLE
 & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
(212) 248-3191

PAUL A. ROSENTHAL
FAEGRE DRINKER BIDDLE
 & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7030

*Counsel for Appellant Epic Games Inc.*



 PRINTED ON RECYCLED PAPER 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellant Epic Games, Inc. certifies that it has no parent corporation and that Tencent Holdings Limited indirectly owns more than 10% of Epic Games' stock through its wholly owned subsidiaries.

Dated:  January 2, 2025                  Respectfully Submitted,

FAEGRE DRINKER BIDDLE
  & REATH LLP

By  <u>/s/  Jeffrey S. Jacobson          </u>
    Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*
EPIC GAMES, INC.

-i-

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES .............................................................. iv

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 6

LEGAL STANDARD .................................................................... 7

STATEMENT OF ISSUES PRESENTED ............................................. 8

STATEMENT OF THE CASE .......................................................... 9

    A.   Ms. Allen Created an Epic Games Account so E.V.A. Could Play *Fortnite* ...................................................... 9

    B.   Ms. Allen Accepted the EULA When She Created an Epic Games Account for E.V.A.'s Use ............................... 10

    C.   E.V.A.'s Claims Arise from her Pre-Lawsuit Gameplay in the Epic Games Account Ms. Allen Created for E.V.A.'s Use ...................................................................... 12

SUMMARY OF THE ARGUMENT ................................................... 16

ARGUMENT ............................................................................. 17

    I.   E.V.A.'s Argument that Ms. Allen Could Not Bind Her to Arbitrate Challenges the Enforceability or Scope of the Arbitration Clause and Must Be Delegated to the Arbitrator .......................................................... 17

    II.  If the Court Does Not Delegate E.V.A.'s Arbitration Challenge, It Should Find that E.V.A. Must Arbitrate Her Substantive Claims .......................................... 21

        A.   Ms. Allen Had the Actual or Apparent Authority to Bind E.V.A. to Arbitration ................................. 22

        B.   E.V.A. Is Equitably Estopped From Avoiding the EULA's Arbitration Requirement .............................. 27

C.   E.V.A.'s Gameplay Estops Her From Disputing That the EULA Binds Her, Regardless of Whether She Continues to Play...................................34

CONCLUSION ........................................................ 37

STATEMENT OF RELATED CASES ...................... 38

CERTIFICATE OF COMPLIANCE......................... 39

CERTIFICATE OF SERVICE.................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ahlstrom v. DHI Mortgage Co.*,
  21 F.4th 631 (9th Cir. 2021) ............................................................2

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  473 U.S. 643 (1986) .......................................................................7

*Atencio v. Bird Rides Inc.*,
  No. 23 Civ. 4787, 2023 WL 8168955
  (C.D. Cal. Nov. 3, 2023).............................................................30

*B.F. v. Amazon.com Inc.*,
  858 F. App'x 218 (9th Cir. 2021) ....................... 30, 32, 33, 34

*Bangart v. Bonaventure of East Wenatchee LLC*,
  No. 23-35528, 2024 WL 3858722
  (9th Cir. Aug. 19, 2024)..........................................................18-19

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023)..................................................18

*Blair v. Rent-A-Center, Inc.*,
  928 F.3d 819 (9th Cir. 2019) ....................................................7

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..................................................7

*C.M.D. v. Facebook, Inc.*,
  621 F. App'x 488 (9th Cir. 2015) .............................. 5, 27, 30

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022)................................................17

*Caremark, LLC v. Choctaw Nation*,
  104 F.4th 81 (9th Cir. 2024)..................................................17

*Chan v. Charter Commc'ns Holding Co.*,
  No. EDCV150886, 2015 WL 12655701
  (C.D. Cal. Aug. 6, 2015).........................................................25

*Cutway v. S.T.A.R. Programs, Inc.*,
   904 N.Y.S.2d 806 (3d Dep't 2010) ........................................................ 26

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
   885 F. Supp. 2d 894 (S.D. Ill. 2012) ................................................ 30-31

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
   97 F.4th 1190 (9th Cir. 2024) ........................................................ 2, 17

*Global Travel Mktg., Inc. v. Shea*,
   908 So. 2d 392 (Fla. 2005) ................................................................ 26

*Heidbreder v. Epic Games, Inc.*,
   438 F. Supp. 3d 591 (E.D.N.C. 2020) ............................................ 25-26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .................................................................... 7, 17

*Hojnowski v. Vans Skate Park*,
   901 A.2d 381 (N.J. 2006) ............................................................ 26, 27

*I.C. v. StockX, LLC*,
   19 F.4th 873 (6th Cir. 2021) ............................................................ 14

*K.F.C. v. Snap Inc.*,
   29 F.4th 835 (7th Cir. 2022) ............................................................ 14

*Keebaugh v. Warner Bros. Entm't Inc.*,
   100 F.4th 1005 (9th Cir. 2024) .......................................................... 2

*King v. Riveland*,
   886 P.2d 160 (Wash. 1994) ...................................................... 4, 16, 23

*Ligeri v. Amazon.com Inc.*,
   No. 23 Civ. 603, 2024 WL 3638241
   (D. Conn. Aug. 2, 2024) ............................................................ 29, 33

*Marshall v. Hipcamp Inc.*,
   No. 23 Civ. 6156, 2024 WL 2325197
   (W.D. Wash. May 22, 2024) ............................................ 28-29, 34, 36

*Mendieta v. Credit Mgmt., L.P.*,
   No. 23 Civ. 2512, 2023 WL 6786844
   (C.D. Cal. Sept. 19, 2023) ...................................................... 19, 20, 21

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) .............................................. 8

*Mohr v. Grantham*,
   262 P.3d 490 (Wash. 2011)................................................... 23

*Morrow v. Norwegian Cruise Line Ltd.*,
   262 F. Supp. 2d 474 (M.D. Pa. 2002) ....................................31, 36-37

*Motise v. America Online, Inc.*,
   346 F. Supp. 2d 563 (S.D.N.Y. 2004) ................................... 30

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ............................................. 28

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ............................................. 23

*N.A. v. Nintendo of America Inc.*,
   No. 23 Civ. 2424, 2023 WL 8587628
   (N.D. Cal. Dec. 11, 2023) .................................................. 14

*Naimoli v. Pro-Football, Inc.*,
   No. 23-2020, 2024 WL 4597029
   (4th Cir. Oct. 29, 2024).................................................... 24

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612
   (2d Cir. 2020)................................................................ 24

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99-2062, 1999 WL 1074120
   (C.D. Cal. June 9, 1999) ...............................................31, 36

*Rent-A-Center W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................2, 7, 17

*Revitalization Partners, LLC v. Equinix, Inc.*,
   No. 16 Civ. 1367, 2017 WL 823291
   (W.D. Wash. Mar. 2, 2017) ............................................... 23

*Sanchez v. Nintendo*,
   2022 WL 4099154 (N.D. Cal. Sept. 7, 2022) ........................ 21

*Steadman v. Green Tree Servicing, LLC*,
   No. 14 Civ. 854, 2015 WL 2085565
   (W.D. Wash. May 5, 2015)....................................................23

*Taylor Morrison of Texas, Inc. v. Ha*,
   660 S.W.3d 529 (Tex. 2023)..............................................26

*Tice v. Amazon.com, Inc.*,
   845 F. App'x 535 (9th Cir. 2021) ..................................25, 33

*Tice v. Amazon.com, Inc.*,
   No. 19 Civ. 1311, 2020 WL 1625782
   (C.D. Cal. Mar. 25, 2020) .................................................33

*Townsend v. Quadrant Corp.*,
   268 P.3d 917 (Wash. 2012).......................................*passim*

*Wylie v. Island Hotel Co. Ltd.*,
   No. 15-24113, 2018 WL 3421374
   (S.D. Fla. July 13, 2018)....................................................27

*Yeh v. Tesla, Inc.*,
   23 Civ. 1704, 2023 WL 6795414
   (N.D. Cal. Oct. 12, 2023) ..............................................24, 25

## Statutes and Other Authorities:

9 U.S.C. § 1 ...............................................................................6

9 U.S.C. § 16(a)(1)(C).............................................................6

15 U.S.C. § 501 ......................................................................12

28 U.S.C. § 1332(d) .................................................................6

Wash. Rev. Code Ann. § 19.86.020........................................13

Restatement (Third) of Agency § 2.01 (2006) .........................23

Samuel Williston & Richard A. Lord, A Treatise on the Law
   of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) .................31

Transcript of Proceedings, *Sanchez v. Nintendo of America*,
   No. 20 Civ. 6929 (N.D. Cal. Mar. 13, 2021) ...................20, 21

## **INTRODUCTION**

In this putative class action, Plaintiff-Appellee E.V.A., suing by and through her parent, Ms. Stephanie Allen, alleges that Defendant-Appellant Epic Games, Inc. ("Epic Games") collected her personal information while she played the popular video-game experience *Fortnite*. This appeal concerns in what forum E.V.A. must pursue these claims—arbitration or the District Court. E.V.A.'s claims belong in arbitration because all persons who create an Epic Games account to play *Fortnite* must agree to the *Fortnite* End User License Agreement ("EULA"), which includes an arbitration agreement and a delegation clause that expressly delegates to the arbitrator all disputes over the "validity, enforceability, or scope" of the arbitration agreement.

The relevant facts are undisputed: E.V.A.'s parent, Ms. Allen, submitted a declaration to the District Court in which she acknowledged that she set up an Epic Games account for E.V.A. to use to play *Fortnite* and that E.V.A.'s gameplay occurred in that account. ER-68 ¶ 3. Contract formation is not at issue; Ms. Allen assented to the EULA when she created the account. ER-9; ER-68 ¶ 3; ER-98 ¶ 3. The EULA requires an adult to accept it on a minor's behalf, ER-104-105, and Ms. Allen did

-1-

precisely that. E.V.A.'s claims that Epic Games collected her personal information while she played in the account Ms. Allen created for her indisputably arise from her gameplay. *See* ER-125 ¶¶ 11-12; ER-139-143 ¶¶ 73-94. Despite this, E.V.A. contends that she is not bound by the EULA Ms. Allen accepted and therefore need not arbitrate her claims.

E.V.A.'s argument that Ms. Allen's agreement does not bind her to the EULA, including its arbitration agreement, is a challenge to the ***enforceability*** or ***scope*** of that arbitration agreement—not a challenge to the EULA's formation. *See, e.g.*, *Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 634-36 (9th Cir. 2021) (differentiating non-delegable formation disputes from delegable scope or enforceability disputes). By its terms, the EULA "clearly and unmistakably delegated" enforceability and scope disputes to the arbitrator. *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). This Court, consistent with Supreme Court precedent, has held that a "delegation clause commits to the arbitrator nearly all challenges to an arbitration provision." *Id.* (citing *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)); *see also Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1013 n.2 (9th Cir. 2024) (same). Controlling precedent's broad application of delegation

-2-

clauses should have caused the District Court to delegate this dispute over the arbitrability of E.V.A.'s claims and allow an arbitrator to decide whether E.V.A. is bound by Ms. Allen's assent to the EULA.

The District Court properly compelled E.V.A.'s six co-plaintiffs to arbitrate pursuant to the EULA's delegation clause. Those co-plaintiffs claimed that they accepted the EULA themselves (rather than getting a parent to accept it, as the EULA required). They argued that, as minors, they can disaffirm the EULA, including its arbitration agreement, and therefore keep their dispute in court. The District Court correctly treated the asserted disaffirmances as disputes over the arbitration agreement's enforceability and applied the delegation clause, requiring arbitrators to decide those co-plaintiffs' arbitrability disputes.

The District Court denied Epic Games' motion to compel arbitration only as to E.V.A. In doing so, the District Court did not address the delegation clause. Instead, it focused on an inapposite fact issue. The District Court reasoned that although "E.V.A. 'has played Fortnite' using an account set up by Ms. Allen," there was not sufficient evidence to ascribe "ongoing gameplay" in Ms. Allen's account to E.V.A.—in other words, gameplay after E.V.A. filed this lawsuit. ER-19. It was error for

-3-

the District Court to deny Epic Games' motion on this basis, however, because E.V.A.'s claims arise from E.V.A.'s pre-Complaint gameplay in Ms. Allen's account. The District Court thus had all the information it needed to apply the delegation clause and compel E.V.A. to arbitrate.

The only possible basis for not applying the delegation clause to E.V.A. would be to treat her argument that Ms. Allen's acceptance of the EULA does not bind her as a non-delegable matter of contract **formation,** rather than one of enforceability or scope of the agreement Ms. Allen undisputedly formed. The Court should not so hold, but if it does, and therefore decides for itself whether E.V.A. is bound by the EULA Ms. Allen accepted, the Court should find that E.V.A. is indeed bound and therefore must pursue her substantive claims in arbitration. The law of Washington, where Ms. Allen and E.V.A. reside, is clear that parents have authority to bind their children to agreements, including agreements to arbitrate. *See King v. Riveland*, 886 P.2d 160, 165 (Wash. 1994). Further, E.V.A. accepted the benefits of the contract Ms. Allen accepted on her behalf by playing *Fortnite* in the account Ms. Allen created. This Court and the Washington Supreme Court both have held that a minor cannot accept the benefits of a contract while avoiding its

-4-

obligations, as E.V.A. attempts to do. *See C.M.D. v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015); *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012). E.V.A. thus is bound to the EULA both as a matter of Ms. Allen's agency and by equitable estoppel.

A finding that the EULA does not bind E.V.A. and other persons who play *Fortnite* in accounts created by others would have implications far beyond just the venue for dispute resolution. The EULA contains the rules of *Fortnite* gameplay, prohibiting (for example) cheating in the game and harassing other players. E.V.A. contends that ***no part*** of the EULA binds her, including the anti-cheating bar, simply because Ms. Allen followed Epic Games' commonsense requirement that a parent must accept the EULA on a minor's behalf. That is not the law.

This Court should reverse the District Court and direct it to compel E.V.A. to join her co-plaintiffs in arbitration. Because her dispute concerns the scope or enforceability of the agreement Ms. Allen formed on her behalf, the delegation clause requires an arbitrator to resolve the dispute. Even if the Court decides that E.V.A.'s argument raises a matter of contract formation, the Court should find that Washington law binds E.V.A. to the EULA based on principles of agency and equitable estoppel.

-5-

## JURISDICTIONAL STATEMENT

E.V.A., "by and through [her] guardian Stephanie Allen," and six other minors also suing "by and through" their parents, filed a putative class action complaint in the Southern District of California on March 18, 2024. Federal jurisdiction exists pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, there are more than 100 persons in the putative class, and the parties are minimally diverse.[1] Jurisdiction in this Court is proper because the District Court issued its order denying Epic Games' motion to compel arbitration as to E.V.A. on October 2, 2024; the order arose under an agreement governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*; and on October 21, 2024, Epic Games timely appealed as of right under 9 U.S.C. § 16(a)(1)(C), which allows interlocutory appeals from a district court's denial of a motion to compel arbitration.

---

[1] Epic Games is a Maryland corporation headquartered in North Carolina. E.V.A. resides in Washington State, and a majority of class members reside in states other than Maryland and North Carolina.

-6-

## LEGAL STANDARD

This Court reviews denials of motions to compel arbitration *de novo*. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019). When evaluating a motion to compel arbitration, courts generally limit their review to two issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The second issue, sometimes referred to as a "gateway" issue of arbitrability, "can be expressly delegated to [an] arbitrator where 'the parties *clearly and unmistakably*' provide" for this. *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 473 U.S. 643, 649 (1986)) (italics in original). Where a valid delegation provision exists, as it does here, "a court must enforce [that] agreement." *Id.* at 1132. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). *See also Rent-a-Center*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the

-7-

federal court to enforce, and the [FAA] operates on this additional arbitration agreement just as it does on any other."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (delegating arbitrability issue pursuant to clear terms of an arbitration agreement).

## STATEMENT OF ISSUES PRESENTED

1.     Because Ms. Allen accepted the EULA when she created an Epic Games account for E.V.A.'s use—making contract formation undisputed—and because E.V.A.'s argument that her parent's agreement to the EULA does not bind her is a challenge to the ***enforceability*** or ***scope*** of the EULA as a whole, should the Court apply the EULA's delegation clause, which requires disputes over the enforceability or scope of the arbitration agreement to be resolved in arbitration?

2.     If the Court decides instead that E.V.A.'s argument that her parent cannot bind her to the EULA is a non-delegable issue of contract ***formation***, should the Court find that E.V.A. is bound by the arbitration agreement Ms. Allen formed with Epic Games because:

      (a)     Ms. Allen had authority under Washington law to bind E.V.A. to the EULA, including its arbitration requirement, when Ms. Allen created an Epic Games account for E.V.A.'s use; and/or

-8-

(b)    E.V.A., having availed herself of the benefits of the EULA by playing *Fortnite* in Ms. Allen's account with Ms. Allen's permission, is equitably estopped from avoiding the EULA's obligations, including its arbitration requirement?

## STATEMENT OF THE CASE

### A.    Ms. Allen Created an Epic Games Account so E.V.A. Could Play *Fortnite*.

Epic Games publishes *Fortnite*, a popular video game experience. ER-123 ¶ 2. E.V.A.'s Complaint acknowledged that "[t]o play *Fortnite*. . . players must first create an Epic Games account." ER-139 ¶ 74. In this suit, E.V.A. (and six co-plaintiffs) alleged that "[p]rior to September 2019, anyone could create an Epic Games account by providing Epic Games with their first name, last name, and email address, and choosing a name (called a 'display name') for their account." *Id*. After September 2019, she alleged, Epic Games required U.S.-based players to provide a birthdate along with this other information. ER-139-140 ¶¶ 74, 77.

The Complaint pleaded nothing about when each plaintiff created an Epic Games account or any information about their accounts. From the limited information pleaded in the Complaint (E.V.A.'s initials, Ms. Allen's name, and their residence information), Epic Games was not able

-9-

to locate an account associated with E.V.A. But Epic Games did locate accounts that appeared to have been created by Ms. Allen, using Ms. Allen's name, email, and birth date. *See* ER-102 ¶ 18.[2]

After Epic Games moved to compel E.V.A. to arbitrate her claims pursuant to the *Fortnite* EULA, Ms. Allen submitted a declaration stating that E.V.A. "played *Fortnite* using an account that I set up with my email address." ER-68 ¶ 3. Importantly, E.V.A. has not alleged in her Complaint or briefing to the District Court that she used any Epic Games account other than the one Ms. Allen set up for her.

## B. Ms. Allen Accepted the EULA When She Created an Epic Games Account for E.V.A.'s Use.

E.V.A. contended that Epic Games' motion to compel arbitration should be denied as to her because she "is not . . . bound by her parent's acceptance of the [arbitration] agreement." ER-44. It is undisputed,

---

[2] Epic Games' Motion to Compel Arbitration explained the process one must follow to create an account, including affirmative placement of a checkmark in a box next to the words "I have read and agree with the End User License Agreement." ER-99 ¶ 5. The account creation page displayed a boldfaced, all-capitalized notice: "**THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER PROVISION**," with a short explanation of what that means. The page also advised users that "**YOU HAVE A TIME-LIMITED RIGHT TO OPT OUT**" of the arbitration requirement. *Id.*

however, that when Ms. Allen created an account for E.V.A. to use to play

*Fortnite*, she affirmatively agreed to the EULA. The EULA made clear

that when a parent creates an account for a child, the child is bound by

the EULA. It states, in all capital letters:

> TO ENTER INTO THIS LICENSE AGREEMENT, YOU MUST BE AN ADULT OF THE LEGAL AGE OF MAJORITY IN YOUR COUNTRY OF RESIDENCE. YOU ARE LEGALLY AND FINANCIALLY RESPONSIBLE FOR ALL ACTIONS USING OR ACCESSING OUR SOFTWARE, INCLUDING THE ACTIONS OF ANYONE YOU ALLOW TO ACCESS YOUR ACCOUNT. YOU AFFIRM THAT YOU HAVE REACHED THE LEGAL AGE OF MAJORITY, UNDERSTAND AND ACCEPT THIS AGREEMENT (INCLUDING ITS DISPUTE RESOLUTION TERMS). IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT.

ER-104-105. By the terms of the EULA, therefore, Ms. Allen had to accept

the EULA on E.V.A.'s behalf.

The EULA's arbitration agreement defines in broad terms the scope

of "Disputes" that must be resolved in arbitration rather than court:

> You and Epic agree to submit all Disputes between you and Epic to individual binding arbitration. "Dispute" means any dispute, claim, or controversy (except those specifically exempted below) between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, ***including without limitation the***

-11-

> ***validity, enforceability, or scope of this Binding Individual Arbitration section***.
>
> You and Epic agree to arbitrate all Disputes regardless of whether the Dispute is based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory.

ER-113-114 § 12.3.1 (emphasis added). Section 11 of the EULA carves out seven exceptions, none of which E.V.A. has argued could apply here.

### C.   E.V.A.'s Claims Arise from her Pre-Lawsuit Gameplay in the Epic Games Account Ms. Allen Created for E.V.A.'s Use.

The lawsuit, filed on March 18, 2024, alleges that during *Fortnite* gameplay, "Epic [Games] routinely collects personal information, including but not limited to name, screen name, persistent identifiers, geolocation and biometric data, in order to facilitate in-game purchases, target advertising, and sell merchandise." ER-125 ¶ 11. E.V.A. alleges that Epic Games violated the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 501, *et seq.*, by purportedly using this collected information to "develop merchandise and other products such as clothing"; "to develop and promote thematic in-game items made available to purchase"; and to serve "targeted, behavior-based advertising, including in-game product placements." *Id.* ¶ 12. Because

-12-

COPPA does not have a private right of action, the Complaint frames the same conduct as an alleged violation of the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.020, *et seq.* (The Complaint described E.V.A. and Ms. Allen as "domiciled in Onalaska, Washington." ER-128 ¶¶ 31-32.) E.V.A. also alleged a tort claim for "intrusion upon seclusion" and an equitable claim for "unjust enrichment." *See* ER-126-127 ¶¶ 14-18; ER-133 ¶¶ 52-53; ER-155-158 ¶¶ 148-65.

On May 20, 2024, Epic Games moved to compel all seven plaintiffs in this action to arbitrate their claims.[3] Epic Games argued that because the plaintiffs' claims "relate to [their] use . . . of Epic's products," the claims fall within the scope of the EULA's arbitration agreement. *See* ER-

---

[3] Section 11 of the EULA states that "for any Disputes deemed not subject to binding arbitration, . . . you and Epic agree to submit to the exclusive jurisdiction of" courts in Wake County, North Carolina, where Epic Games is headquartered. ER-112 § 11. Epic Games thus also moved, in the alternative, to transfer the case to the Eastern District of North Carolina, which is both the exclusive venue specified in the EULA for litigation of non-arbitrable disputes and the location of Epic Games' headquarters. ER-83. The District Court denied this motion as to E.V.A. for the same reason it denied Epic Games' motion to compel arbitration: its finding that E.V.A. was "not a party" to the *Fortnite* EULA and therefore cannot be held to its arbitration or venue requirements. ER-19, n.5. The District Court's denial of that alternative motion is not before this Court because it is not appealable as-of-right and Epic Games has not sought leave to pursue an appeal from it on an interlocutory basis.

-13-

113. In opposing the motion, Plaintiffs did not argue that the EULA, including the arbitration agreement and delegation clause, were procedurally or substantively unconscionable, or that their claims fall outside of the EULA's definition of arbitrable disputes. Nevertheless, all seven plaintiffs argued that they should not be required to arbitrate. E.V.A.'s co-plaintiffs contended that they accepted the EULA as minors and thus had the legal right to avoid arbitrating by "disaffirming" the entire EULA. *See* ER-51-56. E.V.A. made the different argument that she can play *Fortnite* in the account Ms. Allen created for her without having to follow the EULA's rules. *See* ER-61-62.

On October 2, 2024, the District Court compelled E.V.A.'s co-plaintiffs to arbitration, finding that arbitrators must determine whether those plaintiffs can disaffirm the EULA. *See* ER-9-18.[4] As to E.V.A., however, after acknowledging Epic Games' argument "that it would be

---

[4] The District Court followed the reasoning of multiple courts that held disaffirmance disputes are matters of contract enforcement that arbitrators must decide when the arbitration agreement contains a valid delegation clause. *See* ER-18; *see also, e.g.*, *K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) (compelling minor's disaffirmance defense to arbitration); *I.C. v. StockX, LLC*, 19 F.4th 873 (6th Cir. 2021) (same); *N.A. v. Nintendo of America Inc.*, No. 23 Civ. 2424, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) (same).

unfair to allow E.V.A. to avoid the arbitration agreement that her mother agreed to," the District Court "conclude[d] that Defendant has not at this time established an adequate basis for compelling E.V.A. to arbitrate under the EULA." ER-19. The District Court reasoned that "[t]he only fact in the record specific to E.V.A.'s gameplay is that E.V.A. 'has played Fortnite' using an account set up by Ms. Allen." *Id.* Because the District Court believed that "other facts . . . may be relevant to doctrines of equitable estoppel or agency," it held that "a more complete factual record" is required before Epic Games can compel E.V.A. to arbitrate. *Id.* The District Court did not address the effect of the EULA's "validity, enforceability, and scope" delegation provision on E.V.A.'s attempt to avoid arbitration. *See* ER-18-19.

But the District Court ***did*** have a sufficient factual basis to compel E.V.A. to arbitrate. Namely, (1) E.V.A.'s claims in this case arise from her gameplay prior to filing the Complaint, and (2) Ms. Allen attested that this gameplay occurred in the account she created for E.V.A.'s use. The EULA's delegation provision thus requires an arbitrator to decide whether E.V.A. is bound to the EULA as a result of Ms. Allen's agreement to it. Even if this issue were to be decided in court rather than arbitration,

-15-

Washington law respecting agency and equitable estoppel is clear both that Ms. Allen can bind her child to a contract, and that E.V.A. cannot avoid the contract's obligations after accepting its benefits.

## SUMMARY OF THE ARGUMENT

This Court must first decide whether E.V.A.'s argument that Ms. Allen's agreement to the EULA on E.V.A.'s behalf is a dispute as to the ***enforceability*** or ***scope*** of the EULA's arbitration agreement, which must be resolved in arbitration under the EULA's delegation clause, or is instead a dispute as to contract ***formation***, which must be resolved in court. The former is more appropriate as E.V.A. did not dispute contract formation. If this Court nonetheless treats E.V.A.'s argument as raising a non-delegable issue of contract formation, the Court should still find that E.V.A. is bound to the EULA, including its arbitration requirement. This is true both because, under Washington law, Ms. Allen possessed authority as E.V.A.'s parent to bind E.V.A. to the EULA, and because E.V.A. accepted the benefits of the agreement by playing *Fortnite* in the account Ms. Allen created for her, equitably estopping her from avoiding the same contract's obligations. *See Townsend*, 268 P.3d at 922; *King*, 886 P.2d at 165.

-16-

## ARGUMENT

**I.   E.V.A.'s Argument that Ms. Allen Could Not Bind Her to Arbitrate Challenges the Enforceability or Scope of the Arbitration Clause and Must Be Delegated to the Arbitrator.**

As this Court has held, where "the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022); *see also Caremark, LLC v. Choctaw Nation*, 104 F.4th 81, 86 (9th Cir. 2024) (noting "the well-settled law that arbitrators, not courts, must resolve challenges to the scope or enforceability of an arbitration provision when the parties have formed an agreement to arbitrate containing an enforceable delegation clause.") (internal quotation marks and citations omitted). Indeed, this Court has held that a "delegation clause commits to the arbitrator nearly all challenges to an arbitration provision." *Fli-Lo Falcon*, 97 F.4th at 1194 (citing *Rent-A-Center*, 561 U.S. at 68-70); *see also Henry Schein*, 139 S. Ct. at 530. Only enforceability disputes specific to a delegation clause must be resolved in court, but E.V.A. challenges the EULA's applicability to her as a whole and raises no specific challenge to the delegation clause.

-17-

*See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009-10 (9th Cir. 2023) (challenge to delegation provision must be "specific"); *see also* ER-12 ("Neither the Complaint nor the [plaintiffs'] declarations mention the delegation clause, let alone specifically challenge its enforceability."). The District Court therefore should have considered E.V.A.'s argument to be a dispute over the scope or enforceability of the EULA Ms. Allen formed on her behalf, and it should have compelled this dispute to arbitration.

The District Court compelled E.V.A.'s six co-plaintiffs to arbitrate, correctly treating their disaffirmance arguments as subject to the delegation clause. *See* ER-18. ("[T]he EULA clearly and unmistakably delegates to the arbitrator questions of the 'validity, enforceability, or scope' of the EULA; and . . . Plaintiffs' claims as well as their disaffirmance defense fall within the scope of the EULA's arbitration agreement."). Because E.V.A., like her co-plaintiffs, also disputes enforceability of the EULA as a whole, the District Court should have applied the delegation clause in the same manner and required E.V.A. to make her arguments to an arbitrator. But the District Court did not address the delegation clause's applicability to E.V.A.'s argument, and that was error. *See Bangart v. Bonaventure of East Wenatchee LLC*, No.

23-35528, 2024 WL 3858722 (9th Cir. Aug. 19, 2024) (holding district court erred by addressing enforceability dispute that the parties' agreement expressly delegated to the arbitrator).

This Court has not previously confronted the precise fact pattern at issue here: a minor's contention that she need not follow the rules of gameplay her parent accepted when creating a video-game account for her use. But at least two district courts in this Circuit have compelled arbitration in circumstances similar to E.V.A.'s. In one of the two cases, the plaintiff's brother accepted a service agreement for household internet services that included an arbitration agreement with a broad delegation clause. *See Mendieta v. Credit Mgmt., L.P.*, No. 23 Civ. 2512, 2023 WL 6786844, at *1 (C.D. Cal. Sept. 19, 2023). There, as here, the parties did not dispute the formation of that contract by the brother who accepted it. After the brother who accepted the contract passed away, the plaintiff continued to use the internet services and paid for them. *See id.* When that non-signatory plaintiff asserted claims relating to those

payments, the district court held the plaintiff to be bound by the contract's arbitration requirement. *See id.* at *2.[5]

In another case, parents purchased and set up a video game console, accepted a user agreement during the setup process, and then gifted the console to their minor children. *See* Transcript of Proceedings at 4, *Sanchez v. Nintendo of America*, No. 20 Civ. 6929 (N.D. Cal. Mar. 13, 2021), Dkt. 46. After the console malfunctioned, the children sought to pursue claims against the console manufacturer, arguing that they were not subject to the arbitration agreement their parents accepted. *Id.* at 10. The district court correctly held that an arbitrator should decide whether the asserted claim belonged to the children or the parents and whether the children were subject to the arbitration agreement. *See id.* at 23; *see*

---

[5] In compelling arbitration, the *Mendieta* court seemed to conflate the issues of delegation and estoppel. *See Mendieta*, 2023 WL 6786844, at *3-4. The court held that because the plaintiff accepted benefits under the contract, he was estopped from avoiding the contract's obligations. But the court also said it was sending the dispute to arbitration pursuant to the agreement's delegation clause. *See id.* Because the district court appears to have considered the non-signatory's dispute to concern the scope or enforceability of the contract to which his late brother agreed, it should not have decided whether the non-signatory was estopped from avoiding the contract's obligations. That dispute should have been resolved in arbitration. Because the district court instead decided the estoppel issue itself, it compelled the plaintiff's substantive dispute to arbitration and did not "delegate" anything to the arbitrator.

*also Sanchez*, 2022 WL 4099154, at *1 (N.D. Cal. Sept. 7, 2022) (noting "oral order" compelling arbitration and stating the arbitration's results).

E.V.A.'s dispute, like those in *Mendieta* and *Sanchez*, concerns the enforceability or scope of the agreement Ms. Allen formed on her behalf. E.V.A. does not dispute formation of the EULA when Ms. Allen created the account and certainly has not mounted a specific challenge to the delegation clause. *See* ER-12 (noting that none of the plaintiffs "mention the delegation clause, let alone specifically challenge its enforceability"). Like the family member in *Mendieta* who contracted for internet services for the entire household, and like the parents in *Sanchez*, who bought a console for their children's use, Ms. Allen agreed to the *Fortnite* EULA for E.V.A.'s direct benefit, so E.V.A. could play *Fortnite*.

This Court, therefore, should delegate to arbitration E.V.A.'s dispute that her mother's agreement to the EULA does not bind her.

## II.  If the Court Does Not Delegate E.V.A.'s Arbitration Challenge, It Should Find that E.V.A. Must Arbitrate Her Substantive Claims.

If this Court, rather than an arbitrator, decides whether the EULA's arbitration agreement is enforceable against E.V.A., the Court should determine that it is enforceable for at least two independent

reasons. First, Ms. Allen possessed authority to bind E.V.A. to the EULA when she created an Epic Games account for E.V.A.'s use. Second, E.V.A.'s purposeful availment of the fruits of the EULA (her *Fortnite* gameplay in the account Ms. Allen created for her) equitably estops E.V.A. from avoiding the EULA's rules, including its arbitration requirement for claims arising from her gameplay.

## A. Ms. Allen Had the Actual or Apparent Authority to Bind E.V.A. to Arbitration.

E.V.A. wanted to play *Fortnite*. Ms. Allen, her parent, facilitated this by setting up an Epic Games account for E.V.A.'s use. Epic Games recognized the authority of parents to accept agreements on behalf of their children; indeed, the EULA stated expressly that an adult must accept it when the player is a minor. *See* ER-104-105. All persons who create an account must accept the EULA, and Ms. Allen's declaration did not dispute that she did so. ER-98 ¶ 3; ER-68 ¶ 3. Controlling Washington law makes clear that Ms. Allen had actual and apparent authority to bind E.V.A. to the EULA when she did so.

As this Court has held, "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate and may invoke arbitration against a party, if a preexisting confidential relationship, such as an

-22-

agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (applying California law). Under Washington law, "[a]n agent can bind his or her principal to a contract when the agent has either actual or apparent authority." *Steadman v. Green Tree Servicing, LLC*, No. 14 Civ. 854, 2015 WL 2085565, at *6 (W.D. Wash. May 5, 2015) (citing *King*, 886 P.2d at 165). An agent acts with actual authority under Washington law where, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Revitalization Partners, LLC v. Equinix, Inc.*, No. 16 Civ. 1367, 2017 WL 823291, at *4 (W.D. Wash. Mar. 2, 2017) (quoting Restatement (Third) of Agency § 2.01 (2006)). "[A]pparent authority" exists where "objective manifestations of the principal 'cause the one claiming apparent authority to actually, or subjectively, believe that the agent has the authority to act for the principal' and such belief is objectively reasonable." *Mohr v. Grantham*, 262 P.3d 490, 498 (Wash. 2011) (quoting *King*, 886 P.2d at 165).

-23-

Here, Ms. Allen had both actual and apparent authority to bind E.V.A. to the EULA. She had actual authority because she sought to facilitate E.V.A.'s desire to play *Fortnite*, and the only way for her to do that was to create an account and accept the EULA. She had apparent authority because the EULA expressly called for parents to accept it on behalf of minors. For both reasons, E.V.A. must arbitrate her substantive claims. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268-69 (E.D.N.Y. 2019) (applying Washington law, holding husband had actual authority to bind wife to arbitrate), *aff'd*, 815 F. App'x 612 (2d Cir. 2020); *cf. Naimoli v. Pro-Football, Inc.*, No. 23-2020, 2024 WL 4597029, at *5 (4th Cir. Oct. 29, 2024) (applying Maryland law, holding that a friend who purchased NFL tickets had apparent authority to bind friends who used the tickets to arbitrate).

District courts in this Circuit have compelled minor family members to arbitrate claims arising from agreements accepted by kin that benefited them. In *Yeh v. Tesla, Inc.*, a parent and one-year-old child asserted claims based on video footage allegedly captured by internal vehicle cameras without their consent. No. 23 Civ. 1704, 2023 WL 6795414 (N.D. Cal. Oct. 12, 2023). After rejecting the parent's arguments

-24-

challenging enforcement of the arbitration agreement he accepted when he acquired the vehicle, including the agreement's delegation provision, the court also compelled the minor to arbitrate. *See id.* at *8. The court found there to be "no bright-line rule . . . that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement related to the subject matter of the claims" but determined that the child in that case must arbitrate because of the beneficiary nature of the agreement. *Id.* at *8. The parent expressly alleged he purchased a Tesla to protect the safety and privacy of his child. *See id.*

Here, Ms. Allen's acceptance of the EULA also had a beneficiary purpose—it was done specifically so that E.V.A. could play *Fortnite* in the account—and this Court should reach the same result as in *Yeh*. *See also, e.g.*, *Chan v. Charter Commc'ns Holding Co.*, No. EDCV150886, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) ("the spouse and children of a signatory to the Agreement . . . are bound by the arbitration clause"); *cf. Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021) (compelling arbitration of wife's claims based on equitable estoppel principles due to her husband's assent to Amazon's dispute resolution provision); *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 596

-25-

(E.D.N.C. 2020) (father was bound by minor child's agreement to the *Fortnite* EULA when the father authorized the minor to play in an account the father created).

The principle that a parent can accept a recreational agreement on behalf of a child, and thereby bind the child to arbitrate disputes arising from the activity, does not exist only in Washington; it is established across the country. "[T]he weight of authority…recognizes the enforceability of an arbitration provision when a parent executes an agreement that benefits the parent's minor child and the agreement contains an arbitration provision regarding the child's potential future tort claims." *Cutway v. S.T.A.R. Programs, Inc.*, 904 N.Y.S.2d 806, 812 (3d Dep't 2010) (collecting cases); *see also, e.g.*, *Taylor Morrison of Texas, Inc. v. Ha*, 660 S.W.3d 529, 534 (Tex. 2023) ("[A]s a general matter, parents may sign arbitration agreements on behalf of their children."). Moreover, "a pre-injury agreement to arbitrate does not require a minor to forego any substantive rights" but "specifies only the forum in which those rights are vindicated." *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 392 (N.J. 2006) (citing *Global Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 403 (Fla. 2005)) (same). "Allowing a parent to bind a minor child to

-26-

arbitrate…is not contrary to our duty as *parens patriae* to protect the best interests of the child." *Id.*; *cf. Wylie v. Island Hotel Co. Ltd.*, No. 15-24113, 2018 WL 3421374, at *3-4 (S.D. Fla. July 13, 2018) ("Non-signatory family members are routinely bound to forum selection clauses and other provisions in recreational activities, especially when they "accept[] benefits" under contracts containing those clauses) (collecting cases).

This Court should find that when Ms. Allen accepted the *Fortnite* EULA, she did so as E.V.A.'s actual and apparent agent, and therefore bound E.V.A. to the EULA, including its arbitration requirement.

## B.    E.V.A. Is Equitably Estopped From Avoiding the EULA's Arbitration Requirement.

E.V.A. accepted the benefits of the contract Ms. Allen created by playing *Fortnite* in Ms. Allen's account. Having accepted those benefits, E.V.A. is equitably estopped from avoiding the contract's obligations, including its requirement to arbitrate disputes. As this Court has held, a minor cannot "apply to h[er] own use that part of the transaction which [brought her] a benefit"—here, the ability to play *Fortnite*—and then seek to repudiate the contract's dispute resolution requirements, "which may not be to [her] interest to fulfill." *C.M.D.*, 621 F. App'x at 489 (internal quotation marks and citation omitted). Estoppel, therefore, is a separate,

-27-

independent basis for the Court to conclude that E.V.A. must arbitrate her claims arising from her *Fortnite* gameplay in the account Ms. Allen created for her use.

The estoppel principles at issue here are those of Washington State common law. The Washington Supreme Court, like this Court, has held that "[e]quitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Townsend*, 268 P.3d at 922 (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1049-50 (9th Cir. 2009)). In compelling arbitration in *Townsend*, the Washington Supreme Court held that plaintiffs, having "received the benefit of the bargain," as E.V.A. did, cannot "now seek to avoid the burden of arbitration imposed by" the agreement their parents accepted. *Id.* The *Townsend* Court's holding also applies to E.V.A.—"[t]he children are, thus, bound by the arbitration agreement to the same extent as their parents." *Id.*

A recent decision applying Washington law as expressed in *Townsend* reinforced this same point: Knowing availment of a contract's benefits estops an individual from avoiding that same contract's arbitration clause. *See Marshall v. Hipcamp Inc.*, No. 23 Civ. 6156, 2024

-28-

WL 2325197, at *6-7 (W.D. Wash. May 22, 2024). The *Marshall* court held that a nonsignatory to an arbitration agreement was bound to arbitrate because he "knowingly exploit[ed] the contract in which the arbitration agreement [was] contained," specifically by enjoying a campsite his girlfriend rented for their mutual use. *Id.* (quoting *Townsend*, 268 P.3d 917 (2012)). The parent-child relationship at issue in E.V.A.'s case represents an even stronger basis for applying estoppel than the boyfriend-girlfriend dynamic in *Marshall*.

Under Washington law, "[i]mportantly, the phrase 'knowingly exploits' does not mean that the nonsignatory's claims invoke specific terms of the contract." *Ligeri v. Amazon.com Inc.*, No. 23 Civ. 603, 2024 WL 3638241, at *8 (D. Conn. Aug. 2, 2024) (applying Washington law). Rather, "a nonsignatory can be said to have exploited a contract if [s]he 'obtained a direct benefit' as a result of the contract." *Id.* (quoting *Marshall*, 2024 WL 2325197, at *6). Here, E.V.A. obtained a direct benefit from the EULA by playing *Fortnite*, which she could not have done if Ms. Allen had not accepted the EULA when creating an account

-29-

for E.V.A. to use.[6] *Cf. Atencio v. Bird Rides Inc.*, No. 23 Civ. 4787, 2023 WL 8168955, at *2 (C.D. Cal. Nov. 3, 2023) (compelling mother to arbitrate injury claims when, although not a party to the arbitration agreement, she could not have unlocked or used the scooter but for her son's creation of an account and acceptance of the agreement).

If the law were otherwise, this "would permit individuals to avoid" all contractual rules governing use of online accounts "simply by having third parties create accounts and then using them as the Plaintiff did." *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004) (enforcing forum selection provision of online agreement when adult stepson of the account creator used his stepfather's America Online account and asserted claims arising from his use of the account). That is why this Court held in *C.M.D.* that minors cannot accept a contract's benefits but then seek to evade the contract's requirements for resolving disputes. *See, e.g., E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d

---

[6] The above quotes come from Supreme Court Justice Stephens' opinion, which technically is labeled an opinion "concurring in part and dissenting in part." As this Court explained in *B.F. v. Amazon.com Inc.*, "[b]ecause Justice Stephens' opinion received five votes—a majority of the Court— it constitutes the majority opinion even though it is not the 'lead' opinion." 858 F. App'x 218, 221 n.1 (9th Cir. 2021)

894, 899 (S.D. Ill. 2012) (estoppel prevents California disaffirmance law from being "used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit"); *see also Paster v. Putney Student Travel, Inc.*, No. CV 99-2062, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999) (Plaintiff who allegedly suffered personal injuries on a vacation she contracted for "cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a [dispute resolution] clause that do not suit her");[7] Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) ("If an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions.").

If the law permitted E.V.A. to play *Fortnite* in the account Ms. Allen created for her without having to follow the rules of gameplay, the implications would be far broader than just the venue for disputes. E.V.A.

---

[7] The court in *Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002), reached the same conclusion: "Plaintiff boarded the [ship] with her family and took the cruise. Since Plaintiff cannot give back, or in any way disgorge, the benefit of her contract, it would be inequitable to now release her from the obligations and consequences attached to that benefit. It is appropriate, therefore, to hold her to the rest of the bargain," including the obligation to arbitrate.

is not merely challenging the EULA's arbitration agreement; she contends her gameplay is not subject to the EULA *at all*. This would mean she is not bound by the EULA's anti-cheating provisions, prohibitions on harassing other players, prohibitions on posting inappropriate content, or any of the EULA's other rules. If any *Fortnite* player could gain a license to cheat in the game simply by having someone else place the check mark in the box signaling assent to the EULA, these important provisions would be effectively nullified. No precedent from any jurisdiction compels such a result.

E.V.A.'s District Court briefing cited this Court's decision in *B.F. v. Amazon.com Inc.*, characterizing *B.F.* as holding broadly that "minor plaintiffs [are not] bound by arbitration agreements contained in user agreements entered into by their parents." ER-61 (citing 858 F. App'x 218 (9th Cir. 2021)). But that is not what this Court held in *B.F.*, and the case, in fact, supports Epic Games' position. In *B.F.*, parents purchased voice-activated devices for use inside their homes. *Id.* at 220. The parents agreed to arbitrate claims against Amazon arising from their use of the devices. *See id.* But the plaintiff children neither intended to use the devices nor were authorized by their parents to do so. The children

alleged that the devices recorded their voices without their consent under circumstances where they were not actual or intended beneficiaries of their parents' agreement with Amazon. *See id.* at 219-20.

Here, by contrast, E.V.A. specifically (and correctly) pleaded that one cannot play *Fortnite* without setting up an account and accepting the EULA. ER-139 ¶ 74; ER-68 ¶ 3. Ms. Allen authorized E.V.A. to use the account she created, E.V.A. used the account to play *Fortnite*, and E.V.A.'s claims in this case arise from that gameplay. *Cf. Tice v. Amazon.com, Inc.*, No. 19 Civ. 1311, 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020) (compelling wife to arbitrate claims that an Alexa device recorded her voice because "she voluntarily utilize[d] Alexa"), *partially rev'd on other grounds*, 845 F. App'x 535 (9th Cir. 2021). This case, therefore, presents exactly the direct-benefit fact pattern that this Court held to be absent in *B.F.* and that prevented the *B.F.* court from applying the Washington Supreme Court's decision in *Townsend. See B.F.*, 858 F. App'x at 220-21 (discussing *Townsend*). E.V.A., therefore, unlike the plaintiffs in *B.F.*, is bound by estoppel to arbitrate her claims. *See, e.g.*, *Ligeri*, 2024 WL 3638241, at *7-8 (applying Washington law and compelling arbitration on multiple grounds, including estoppel, against

a plaintiff that had an account on the defendant's platform and therefore "obtained a benefit" from it); *Marshall*, 2024 WL 2325197, at *6 n.3 (distinguishing *B.F.* because the non-signatory boyfriend "necessarily relied on his girlfriend's reservation under the contract for his permission to camp on the property").

### C. E.V.A.'s Gameplay Estops Her From Disputing That the EULA Binds Her, Regardless of Whether She Continues to Play.

E.V.A.'s past gameplay, and the fact that her claims arise from that past gameplay, estop her from avoiding the obligation to arbitrate her claims. In all the cases discussed above, the plaintiffs' claims arose from their ***pre-suit*** exploitation of the benefits of contracts, without regard to whether those plaintiffs had an ***ongoing*** contractual relationship with the defendants. *See supra* pp. 22-33. Estoppel principles required those plaintiffs to adhere to the contracts' rules, including rules dictating how and where disputes must be resolved. The same should have been true here, regardless of whether or when E.V.A. stopped playing *Fortnite*.

The District Court "denie[d] Defendant's motion as to plaintiff E.V.A. without prejudice to Defendant renewing such a motion based on a more complete factual record." *Id.* The fact issue the District Court

erroneously found relevant to Epic Games' motion is whether E.V.A. continued to play *Fortnite* after bringing this lawsuit. *See* ER-19. Epic Games submitted a declaration explaining that ongoing gameplay occurred in some of the Plaintiffs' accounts because other Plaintiffs (but not E.V.A.) raised contractual disaffirmance as a basis for avoiding arbitration.[8] The District Court referenced Epic Games' declaration "address[ing] ongoing gameplay" in several of the co-plaintiffs' Epic Games accounts, including "Ms. Allen's." *Id.* As the only specified reason for declining to compel arbitration, the court noted that Epic Games "cannot ascribe" ongoing gameplay in Ms. Allen's account "to E.V.A." *Id.*

---

[8] Epic Games successfully argued that arbitrators must resolve E.V.A.'s co-plaintiffs' contentions that they can avoid arbitration by purporting to disaffirm the EULA. *See* ER-9-18. Epic Games also argued, in the alternative, that if the District Court elected to decide for itself whether E.V.A.'s co-plaintiffs had the ability to disaffirm, it should reject their purported disaffirmances because several of them continued to play *Fortnite* in their Epic Games accounts. *See* ER-22-23. Ms. Allen's account was one of the accounts in which Epic Games demonstrated continued gameplay. *See* ER-35 ¶ 6. Epic Games discussed Ms. Allen's account because one of E.V.A.'s co-plaintiffs is her sibling, M.A. *See* ER-128 ¶¶ 30-32. Unlike E.V.A., whom Ms. Allen admitted "played Fortnite using an account that I set up with my email address during the Class Period," ER-68 ¶ 3, Ms. Allen stated only that "M.A. . . . played Fortnite on several accounts during the Class Period." *Id.* ¶ 2. Epic Games included information about Ms. Allen's account in its reply declaration to address the possibility that M.A. may have played in the same account E.V.A. did.

-35-

Whether E.V.A. continued to play *Fortnite* after she filed this lawsuit, however, is not relevant to any potential basis for compelling her to arbitrate. It is not relevant to application of the delegation clause because any dispute over scope or enforceability of the arbitration agreement belongs in arbitration. *See supra* Section I. It is not relevant to agency because Ms. Allen bound E.V.A. to the EULA the moment Ms. Allen accepted it for E.V.A.'s benefit. *See supra* Section II.A. And it is not relevant to estoppel because E.V.A. became estopped from avoiding the EULA's obligations the moment she accepted its benefits by playing, regardless of when (or if) she stopped. *See supra* Section II.B.

E.V.A.'s claims arise from Epic Games' alleged collection of information from and about her while she played *Fortnite* prior to suing Epic Games. *See* ER-123 ¶ 1. She occupies the same position as the camper in *Marshall* who was compelled to arbitrate claims that arose from her <u>past</u> use of the campsite her boyfriend rented for their mutual use. *See Marshall*, 2024 WL 2325197, at *6-7. Hers is the same position as the minors in *Paster* and *Morrow* who were compelled to follow the contract's dispute-resolution rules for claims that arose from <u>past</u> contracted-for travel. *See Paster*, 1999 WL 1074120, at *2; *Morrow*, 262

-36-

F. Supp. 2d at 476. Like those plaintiffs, E.V.A. must arbitrate her claims because of her past availment of the benefits of the contract, without regard to whether she continues to play *Fortnite*.

## <u>CONCLUSION</u>

For the foregoing reasons, Epic Games respectfully requests that the Order of the District Court partially denying its Motion to Compel Arbitration as to E.V.A. be REVERSED.

Dated:  January 2, 2025              Respectfully Submitted,

FAEGRE DRINKER BIDDLE
  & REATH LLP

By  /s/  Jeffrey S. Jacobson
    Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*
EPIC GAMES, INC.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellant states that it is unaware of any related case(s) that is currently pending before this Court.

Dated:  January 2, 2025     Respectfully Submitted,

              FAEGRE DRINKER BIDDLE
               & REATH LLP

              By  /s/  Jeffrey S. Jacobson
                Jeffrey S. Jacobson

              *Attorneys for Defendant-Appellant*
              EPIC GAMES, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Ninth Circuit Rule 32-1 because it contains 7,823 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated:  January 2, 2025               Respectfully Submitted,

FAEGRE DRINKER BIDDLE
  & REATH LLP

By  /s/  Jeffrey S. Jacobson
     Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*
EPIC GAMES, INC.

-39-

## CERTIFICATE OF SERVICE WHEN
## <u>ALL CASE PARTICIPANTS ARE CM/ECF PARTICIPANTS</u>

U.S. Court of Appeals for the Ninth Circuit Docket Number: 24-6443

I hereby certify that I electronically filed the foregoing Opening Brief of Defendant-Appellant Epic Games, Inc., with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 2, 2025.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 2, 2025        Respectfully Submitted,

FAEGRE DRINKER BIDDLE
 & REATH LLP

By /s/ Jeffrey S. Jacobson
    Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*
EPIC GAMES, INC.

-40-