**Docket No. 24-6443**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

———————————————

E.V.A., by and through her Guardian Stephanie Allen,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

EPIC GAMES INC.,

*Defendant-Appellant.*

———————————————

*Appeal from a Decision of the United States District Court for the Southern District of California,*
*No. 3:24-cv-00517-RSH-AHG – Honorable Robert Steven Huie*

## ANSWERING BRIEF OF APPELLEE E.V.A.

DAVID S. GOLUB
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Fl.
Stamford, CT 06901
(203) 325-4491

PATRICK CAREY
LEXINGTON LAW GROUP, LLP
503 Divisadero Street
San Francisco, CA 94105
(415) 913-7800

*Attorneys for Plaintiff-Appellee E.V.A., by and*
*through her Guardian Stephanie Allen*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Epic's Mischaracterization of Key Facts. . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STANDARDS OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.     EPIC'S APPEAL SHOULD BE REJECTED AND THIS
       ACTION SHOULD BE REMANDED TO THE DISTRICT
       COURT FOR A PROMPT ADJUDICATION OF
       UNRESOLVED ISSUES RELEVANT TO EPIC'S MOTION. . . . . . . . 12

II.    EPIC'S EFFORTS TO SUBJECT E.V.A., A NON-SIGNATORY
       MINOR, TO THE  EULA'S ARBITRATION PROVISIONS
       SHOULD BE REJECTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    The Issue of Whether E.V.A., as a Non-Signatory Minor,
           Is Subject to the EULA's Delegation Clause Is a
           Non-Delegable Issue of Contract Formation. . . . . . . . . . . . . . . . 18

B.    The Question of Whether E.V.A., As a Non-Signatory Minor, Can Be Bound to the EULA's Arbitration Provision Turns on Unresolved Fact Issues. . . . . . . . . . . . . . . . . . . . . . . . . 28

    1.    Unresolved Issues of Material Fact Preclude Any Finding that Stephanie Allen Had Actual or Apparent Authority to Bind E.V.A. to the EULA's Arbitration Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    2.    Unresolved Factual Issues Preclude Any Determination that E.V.A. Is  Equitably Estopped from Avoiding Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    3.    Numerous Unresolved Factual Issues Prevented the District Court from Compelling E.V.A. to Arbitrate. . . . . . . 42

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF AUTHORITIES

Cases                                                                    Page

*Ahlstrom v. DHI Mortgage Co., Ltd., LP*,
    21 F.4th 631 (9th Cir. 2021)............................. 10, 18, 19, 28

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)......................................... 20

*Ashbey v. Archstone Property Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015). ........................... 17, 24, 29

*Atencio v. Bird Rides Inc.*,
    23 Civ. 4787, 2023 WL 8168955
    (C.D. Cal. Nov. 3, 2023). .................................... 39

*B.F. v. Amazon.com Inc.*,
    858 Fed. App'x. 218 (9th Cir. 2021). ...................... *passim*

*Balen v. Holland Am. Line Inc.*,
    583 F.3d 647 (9th Cir. 2009). ............................... 11, 16

*Bennett v. Gemmill (In re Combined Metals Reduction Co.*,
    557 F.2d 179 (9th Cir. 1977). ................................. 13

*Billieson v. City of New Orleans*,
    863 So.2d 557 (La. Ct. App. 2003)............................. 34

*Boomer v. AT&T Corp.*,
    309 F.3d 404 (7th Cir. 2002). ................................ 14

*Coatney v. Ancestry.com DNA LLC*,
    93 F.4th 1014 (7th Cir. 2024)................................. 34

*Caremark, LLC v. Chickasaw Nation*,
    43 F.4th 1021 (9th Cir. 2022)................................. 25

*Chan v. Charter Comm's Hldg. Co.*,
No. EDCV 150886, 2015 WL 12655701
(C.D. Cal. Aug. 6, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Colonial Imports v. Carlton Northwest*,
853 P.2d 913 (Wash. 1993) (en banc). . . . . . . . . . . . . . . . . . . . . . . . 41

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cutway v. S.T.A.R. Programs, Inc.*,
904 N.Y.S.2d 806 (3d Dep't 2010) . . . . . . . . . . . . . . . . . . . . . . . . 33, 35

*Emelyanenko v. Strafach*,
23-cv-00570, 2024 WL 4336522
(N.D. Cal. Sept. 27, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fleetwood Enterprises , Inc. v. Gaskamp*,
280 F.3d 1069 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Global Travel Mktg., Inc. v. Shea*,
908 So.2d 392 (Fla. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 34

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
581 U.S. 287 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*Hansen v. LMB Mortgage Svcs., Inc.*,
1 F.4th 667 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Heidbreder v. Epic Games, Inc.*,
438 F. Supp.3d 591 (E.D. N.C. 2020). . . . . . . . . . . . . . . . . . . . . . . . 32

*Herrera v. Cathay Pacific Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

*Hoefler v. Babbitt*,
139 F.3d 726 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hojnowski v. Vans Skate Park*,
901 A.2d 381 (N.J. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 35

*Hormel v. Helvering*,
312 U.S. 552 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

*In re Ring LLC Privacy Litig.*,
CV 19-10899, 2021 WL 2621197
(C.D. Cal. June 24, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jackson v. Amazon.com, Inc.*
559 F. Supp.3d 1132 (S.D. Cal. 2023),
*aff'd*, 65 F.4th 1093 (9th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Jin v. Parsons Corp.*,
966 F.3d 821 (D.C. Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kearney v. Salomon Smith Barney, Inc.*,
137 P.3d 914 (Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22, 24

*Kramarevcky v. Dept. of Soc. and Health Svcs.*,
863 P.2d 535 (Wash. 1993) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Lazar v. Kroncke*,
862 F.3d 1186 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Leahy v. CMH Homes, Inc.*,
    2:24-cv-01855, 2025 WL 318080
    (E.D. Cal. Jan. 28, 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ligeri v. Amazon.com Inc.*,
    No. 23 603, 2024 WL 3638241 (D. Conn. Aug. 2, 2024),
    *app. filed* Sept. 6, 2024 (2d Cir. No. 24-2337). . . . . . . . . . . . . . . . . . . . . 39

*Marshall v. Hipcamp, Inc.*,
    735 F. Supp.3d 1283 (W.D. Wash. 2024). . . . . . . . . . . . . . . . . . . . . . . . 39

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*,
    105 F.3d 1192 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mendieta v. Credit Mgmt., L.P.*,
    2:23-cv-2512, 2023 WL 6786844
    (C.D. Cal. Sept. 19, 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Microchip Technology Inc.v. U.S. Philips Corp.*,
    367 F.3d 1350 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mohr v. Grantham*,
    262 P.3d 490 (Wash. 2011) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Naimoli v. Pro-Football, Inc.*,
    120 F.4th 380 (4th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

vi

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp.3d 254 (E.D.N.Y. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Nkemakolam v. St. John's Military School*,
   876 F. Supp.2d 1240 (D. Kan. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Norcon Builders, LLC v. GMP Homes,VG, LLC*,
   254 P.3d 835 (Wash.App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Norwood v. MultiCare Health Sys*.,
   548 P.3d 978 (Wash.App. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 38

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Revitalization Partners, LLC v. Equinix, Inc*.,
   16 Civ. 1367, 2017 WL 823291
   (W.D. Wash. Mar. 2, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*S.T.G., et al. v. Epic Games, Inc*.,
   24-cv-517, 2024 WL 4375782
   (S.D. Cal. Oct. 2, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sanchez v. Nintendo of Am*.,
   20 Civ. 6929 (N.D. Cal. Mar. 13, 2021). . . . . . . . . . . . . . . . . . . . . . . 26, 28

*Sandvik AB v. Advent Int'l Corp*.,
   220 F.3d 99 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Satomi Owners Ass'n v. Satomi, LLC*,
   225 P.3d 213 (Wash. 2009) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Singleton v. Wulff*,
   482 U.S. 106 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Snowden v. CheckPoint Check Cashing*,
   290 F.3d 631 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

vii

*Stendal v. Memorial Health Svcs.*,
No. 23-3561, 2024 WL 5102871
(9th Cir. Dec. 13, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stern v. Peloton Interactive, Inc.*,
566 F. Supp.3d 1019 (S.D. Cal. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Taylor Morrison of Texas, Inc. v. Ha*,
660 S.W.3d 529 (Tex. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Taylor v. Pilot Corp.*,
955 F.3d 572 (6th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tice v. Amazon.com, Inc.*,
845 Fed. App'x. 535 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Townsend v. Quadrant Corp.*,
268 P.3d 917 (Wash. 2012) (en banc). . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Trans-Tec Asia v. M/V Harmony Container*,
518 F.3d 1120 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Waymo LLC v. Uber Technologies*,
252 F. Supp.3d 934 (N. D. Cal. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Yeh v. Tesla, Inc.*,
23-cv-01740, 2023 WL 6795414
(N.D. Cal. Oct. 12, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

<u>Statutes and Other Authorities</u>:

9 U.S.C. § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9 U.S.C. § 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 13

9 U.S.C. § 16(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14

9 U.S.C. § 16(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 6501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 6502(a) & (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 C.F.R. Part 312.1, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NY CPLR § 1209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Restatement (Third) of Agency § 2.01 (2006) . . . . . . . . . . . . . . . . . . . . . 30

Wash. Rev. Code Ann. § 19.86.020, *et seq.* . . . . . . . . . . . . . . . . . . . . . . 38

# INTRODUCTION

This putative class action arises out of the unlawful business practices of Defendant Epic Games, Inc. ("Epic") and Epic's invasions of the privacy of millions of children under the age of 13. Epic is the developer and distributor of *Fortnite*, a popular video game which is "purposefully designed to appeal to younger children." Class Action Complaint ("Complaint"), ¶ 4 (Excerpts of Record at 124).[1] The Complaint alleges that Epic generates billions of dollars in revenue based on its unlawful collection and exploitation of highly sensitive "Personal Information" of children under the age of 13, including the names of those children and their "persistent identifiers," such as IP addresses, unique device identifiers or "cookies" that track a child's activity online, geolocation information, photos, videos and audio recordings. Epic is alleged to use this information to "facilitate in-game purchases, target advertising and sell merchandise" to very young children. *Id.*, ¶¶ 7, 9, 11-12 (ER 124-25).

Collection of such "Personal Information" is regulated by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, *et seq.*, which was enacted by Congress in 1998 to "protect children's privacy by limiting the collection of personal information from children without parental consent." *See* 144 Cong. Rec. S12787.

---

[1] The Complaint is found in the Excerpts of Record ("ER") at ER-122-61.

COPPA expressly prohibits online operators from collecting designated Personal Information belonging to children under the age of 13 without notice to and consent from those children's parents. 15 U.S.C. § 6502(a) & (b); 16 C.F.R. Part 312.1, *et seq.*

In 2022, the Federal Trade Commission ("FTC") brought an action against Epic alleging violations of COPPA, and on December 22, 2022, Epic agreed to a permanent injunction, which, among other things, barred Epic from using intrusive default settings to collect data from children under 13 without verifiable parental notice and consent, and required Epic to establish default privacy settings, delete information previously collected, and establish reporting requirements. The FTC also imposed a $275 million civil penalty on Epic for its COPPA violations. Complaint ¶¶ 14-16 (ER-126-27). However, the FTC settlement did not provide relief to children whose information had been illegally collected by Epic. *Id.* ¶ 17 (ER-127).

The Complaint in this class action was brought on behalf of seven named Plaintiffs by their guardians. However, because the End User License Agreement ("EULA") that EPIC uses for *Fortnite* has, since March 15, 2019, included a provision requiring users to arbitrate disputes with Epic,[2] Epic moved in the district

---

[2] Declaration of Joshua Shaw, dated May 20, 2024 ("Shaw Dec."), ¶¶ 1-5 (ER-98-99).

court to compel all Plaintiffs to arbitrate their claims. *See* Epic's Notice of Motion and Motion to Compel Arbitration, filed May 20, 2024 ("Motion"), ER- 69-89. In response, the district court issued an order on October 2, 2024 compelling six of the seven minor plaintiffs to arbitrate their claims, but denying Epic's motion as to the claims asserted by plaintiff E.V.A. "without prejudice to Defendants renewing such motion based on a more complete factual record."[3]

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, mandates that – when a district court finds that the factual record on a motion to compel arbitration does not enable it to ascertain whether there is an effective arbitration agreement – *"the court shall proceed summarily to the trial thereof*." (Emphasis added). However, instead of proceeding "summarily" to trial to determine whether E.V.A. – a minor who never signed or otherwise assented to Epic's EULA – had entered into a binding agreement to arbitrate, Epic immediately filed this appeal. As a result, Epic's present appeal is taken from the district court's explicitly nonfinal denial, "without prejudice," of its Motion. While this does not deprive the Court of jurisdiction, which is available pursuant to 9 U.S.C. § 16(a)(1)(B), *see Hansen v. LMB Mortgage Svcs., Inc.*, 1 F.4th

---

[3] *See* Order Granting in Part and Denying in Part Defendant's Motion to Compel Arbitration (hereafter "Order") entered in *S.T.G., et al. v. Epic Games, Inc.*, 24-cv-517 (S.D. Cal. Oct. 2, 2024) (ECF # 21) (ER-3-20). The district court decision is now reported at 2024 WL 4375782.

667, 671-72 (9th Cir. 2021), Epic's failure to proceed "summarily" to trial following the district court's Order rendered the proceedings below "inconsisten[t] with the procedures required by 9 U.S.C. § 4." *Id.* Accordingly, the Court, as it did in *Hansen*, should reject this appeal, vacate the district court's Order as "improperly issued," and remand for further proceedings consistent with the FAA. *Id.* at 671-73.

## JURISDICTIONAL STATEMENT

Pursuant to Rule 28-2.2 of this Court, Appellee agrees with Epic's statement of the jurisdiction of the district court. However, Appellee believes that the Court has jurisdiction of this interlocutory appeal pursuant to § 16(a)(1)(B) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq. See Hansen,* 1 F.4th at 671-72. Epic's reference to 9 U.S.C. § 16(a)(1)(C) in its Jurisdictional Statement, *see* Opening Brief of Appellant Epic Games, Inc. ("Epic Br.") 6, appears to be incorrect.

## STATEMENT OF THE ISSUES

1.     Whether the district court – upon determining that a "more complete factual record" was required to decide Epic's motion to compel – erred by failing to "proceed summarily" to trial, as required by § 4 of the FAA, and, if so, whether the district court's Order should be vacated, and this case remanded for trial to conclusively decide Epic's motion, as the Court held in *Hansen,* 1 F.4th at 673.

2.     Is the question of whether E.V.A. – as a non-signatory minor – is bound by the EULA's arbitration provision a non-delegable question of contract formation that must be decided by a court, or is it subject to arbitration under the EULA's delegation clause.

4

3.      If the issue of whether E.V.A. is bound by the EULA is a non-delegable issue for the court, should this action be remanded to the district court to address such factual issues as may be necessary to determine whether E.V.A. is required to arbitrate her dispute with Epic, including (without limitation):

>       a.      Whether E.V.A.'s mother, as the signatory to the EULA, had actual or apparent authority to bind E.V.A. to the EULA's arbitration provision; and

>       b.      Whether E.V.A., as a non-signatory minor, should be equitably estopped from declining to arbitrate her common law and statutory claims against Epic.

## STATEMENT OF THE CASE

### A.      Procedural Background

This putative class action was brought on March 18, 2024, on behalf of seven minor Plaintiffs by their guardians. It asserted, *inter alia*, common law privacy claims and claims based on the consumer protection statutes of California and Washington State, ¶¶ 1-18 (ER-122-27), and sought monetary damages and equitable relief on behalf of the Plaintiffs and similarly situated children injured by Epic's illegal conduct.

As shown above, Epic responded to the Complaint by moving to compel all Plaintiffs to arbitrate their claims, based on the *Fortnite* EULA's arbitration provisions. (ER-69-89). The district court framed the issues on Epic's Motion as follows:

>       Two disputes are central to resolving this motion. First, for the six of seven plaintiffs who were parties to the EULA, and who contend they subsequently disaffirmed the EULA and its arbitration agreement, the

5

parties dispute whether the EULA's "delegation clause" requires the issue of disaffirmance to be heard in the first instance by the Court or by an arbitrator. Second, the parties dispute whether the seventh plaintiff, E.V.A., can be bound by the arbitration agreement contained in the EULA, where E.V.A.'s mother, and not E.V.A., created an Epic Games account and agreed to the terms of the EULA. Order at 7 (ER-9).

The district court responded to Epic's Motion by issuing an Order that (1) compelled six of the seven minor Plaintiffs to submit their claims to arbitration, *see* Order at 7-16 (ER-9-18), but (2) denied Epic's Motion as to E.V.A "without prejudice." *Id*. at 16-17 (ER-18-19). As to the first dispute identified by the district court (regarding the six disaffirming Plaintiffs), Epic argued – and the district court found – that all of the minor Plaintiffs other than E.V.A. had initially formed a valid contract with Epic (*i.e.*, the EULA), and that the effectiveness of their post-formation efforts to disaffirm those supposed contracts was subject to arbitration based on the EULA's "delegation" provision. Order at 10-11 (ER-12-13). This decision, which Plaintiffs believe is contrary to the explicit language of the EULA,[4] was the basis for

---

[4] The EULA states: "To enter into this license agreement, you must be an adult of the legal age of majority in your country of residence . . . . If you are under the legal age of majority, your parent or legal guardian must consent to this agreement." ER-104-05. On this appeal, Epic expressly admits that, pursuant to that provision of the EULA, it did not seek to form a contract with any minor. *See* Epic Br. 1 ("The EULA requires an adult to accept it on a minor's behalf"). Epic's admission in this appeal that only an adult of legal age could enter into the EULA directly contradicts its argument in the district court that the other six minor plaintiffs entered into agreements with Epic (and that the enforceability of those agreements must be determined by an

6

the district court's order compelling six of the seven Plaintiffs to arbitrate and is, therefore, not the subject of the present appeal.

As to E.V.A., the district court denied Epic's Motion "without prejudice to [Epic] renewing such motion based on a more complete factual record." Order at 17 (ER-19).

### B. Epic's Mischaracterization of Key Facts.

On the first page of its Brief, Epic falsely asserts it is "undisputed" that E.V.A.'s mother, Stephanie Allen, "acknowledged that she set up an Epic Games account *for E.V.A. to use to play Fortnite*." Epic Br. 1 (emphasis added). This statement – which is designed to support Epic's argument that Stephanie Allen acted as E.V.A.'s "agent" when she opened her *Fortnite* account (Epic Br. 22-27) – has no basis in the record whatsoever. It is based entirely on the following statement by Stephanie Allen, in a July 8, 2024 Declaration ("Allen Dec."): "My child, EVA, is under the age of 13 and has played *Fortnite* using an account that I set up with my email address during the Class Period." Allen Dec., ¶ 3 (ER-68). Ms. Allen did not say – nor is it logically inferrable – that she set up an Epic account "so E,V.A. could play

---

arbitrator). In light of this admission and given that *Hansen* requires the district court's order to be vacated, the district court on remand should be directed to reconsider its determination that the other six minor plaintiffs formed contracts that were subject to EULA's delegation provision.

*Fortnite*," or "for E.V.A.'s use," nor did she employ any of the other misleading locutions that Epic uses in its efforts to create the impression that Ms. Allen acted on E.V.A.'s behalf when she set up her own Epic account.[5]  Indeed, the question of whether Ms. Allen acted as E.V.A.'s "agent" was one of the unresolved factual issues that the district court identified in denying Epic's motion to compel.  Order at 17 (ER-19).

It is not necessary for the Court to deal either with this issue (or, for that matter, any of the other issues that Epic seeks to raise on this appeal), because, as shown in Point II below, the Court should simply vacate the district court's nonfinal Order and remand for the further proceedings required by § 4 of the FAA.  However, if the Court chooses to address the additional issues raised by Epic on this appeal – including, but not limited to the agency issues – the question of whether E.V.A., as a non-signatory minor, is bound by the EULA (*i.e.*, whether a contract was formed between Epic and E.V.A.) is not "undisputed" and is central to any determination of whether E.V.A. can properly be compelled to arbitrate her dispute with Epic.

---

[5] For example, Epic elsewhere falsely asserts that "Ms. Allen Created an Epic Games Account so E.V.A. Could Play *Fortnite*," Epic Br. 9; that "Ms. Allen accepted the EULA when she created an Epic Games account for E.V.A.'s use;" *id*. at 10-11, 12 (same).

8

## SUMMARY OF ARGUMENT

The district court's nonfinal Order should be vacated as "improperly issued," *Hansen*, 1 F.4th at 672-73, and this case remanded for the district court to develop a more complete factual record that will enable it to determine whether Epic's motion to compel arbitration should be granted. *Id.*

First, this Court held in *Hansen*, in circumstances indistinguishable from those here, that it is error for a district court to "issue a nonfinal order denying [a] motion to compel arbitration" where "there were genuine disputes of material fact as to whether [the party opposing arbitration] was bound to an arbitration agreement." *Id.* 1 F.4th at 669. Accordingly, the district court, having found that it needed "a more complete factual record" to rule on Epic's Motion, should have "proceed[ed] summarily to trial" to resolve outstanding factual issues, and this Court, as it did in *Hansen*, should vacate the district court's Order and remand for further proceedings consistent with § 4 of the FAA.

Second, Epic's argument that whether E.V.A. is subject to her mother's EULA should be determined by the arbitrator under the EULA's delegation provision is erroneous. It is fundamental that arbitration is a matter of contract and that no one can be forced to arbitrate a dispute he or she has not agreed to arbitrate. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Thus, parties "cannot delegate

9

issues of [contract] formation to [an] arbitrator," because "[i]f no agreement to arbitrate was formed, then there is no basis upon which to compel arbitration." *Ahlstrom v. DHI Mortgage Co., Ltd., LP*, 21 F.4th 631, 635 (9th Cir. 2021). State contract law governs issues of contract formation, and, under the applicable law of Washington State, "nonsignatories to a contract are not bound by an arbitration clause." *Townsend v. Quadrant Corp.*, 268 P.3d 917, 923 (Wash. 2012) (en banc). Although there are exceptions to this rule (where contracts are signed by agents and where equitable estoppel is appropriate), they are not applicable here.

Third, Epic argues that – even if the issue of whether E.V.A., as a non-signatory minor, is bound by the EULA is a non-delegable issue of contract formation – the Court should find that E.V.A. is bound to arbitrate because (a) her mother acted as her agent; and (b) because she should be equitably estopped from refusing to arbitrate. However, these contentions pose some of the same factual issues that the district court found needed to be resolved to conclusively rule on Epic's motion to compel arbitration. *See* Order at 17 (ER-19) (noting facts relevant to "doctrines of equitable estoppel or agency" as among the facts the court needed to decide Epic's motion). Accordingly, the Court should vacate the district court's Order and remand for the further proceedings required by the FAA.

## STANDARDS OF REVIEW

Denials of motions to compel arbitration are reviewed *de novo*. *See, e.g.,* *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). However, when reviewing a district court's decision on a motion to compel arbitration, "[t]he underlying factual findings are reviewed for clear error." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009).

"Because estoppel is an equitable concept that is invoked by the court in its discretion," this Court reviews a district court's rejection of an equitable estoppel argument under an "abuse of discretion standard." *Hoefler v. Babbitt*, 139 F.3d 726, 727 (9th Cir. 1998); *cf. Herrera v. Cathay Pacific Airways Ltd.*, 104 F.4th 702, 704 (9th Cir. 2024) (declining to apply abuse of discretion standard where non-signatory seeks to compel signatory to arbitrate).

## ARGUMENT

### I.   EPIC'S APPEAL SHOULD BE REJECTED AND THIS ACTION SHOULD BE REMANDED TO THE DISTRICT COURT FOR A PROMPT ADJUDICATION OF UNRESOLVED ISSUES RELEVANT TO EPIC'S MOTION.

The district court's Order, insofar as it related to the claims of E.V.A., stated

as follows:

> The Court concludes that Defendant [Epic] has not at this time established an adequate basis for compelling E.V.A. to arbitrate the EULA. Defendant relies in part on the declaration submitted with its reply brief, to which Plaintiffs have not had an opportunity to respond; and while that declaration addresses ongoing gameplay in Ms. Allen's account, it cannot ascribe the gameplay to E.V.A. The only fact in the record specific to E.V.A.'s gameplay is that E.V.A. "has played Fortnite" using an account set up by Ms. Allen. The Court acknowledges that Defendant, prior to discovery, is in the possession of little information regarding when a particular minor is playing on a shared Epic Games account, much less other facts that may be relevant to doctrines of equitable estoppel or agency.

Order at 17 (ER-19).[6] Based on these unresolved issues, the district court "denie[d]

Defendant's motion as to plaintiff E.V.A. without prejudice to Defendant renewing

such a motion based on a more complete factual record." *Id.*

---

[6] The "declaration submitted with [Epic's] reply brief" was that of Joshua D. Shaw (ER 33-35) ("Shaw Reply Dec."). The fact "specific to E.V.A.'s gameplay" referred to by the Court – *i.e.* "that E.V.A. 'has played Fortnite' using an account set up by Ms. Allen" – is from the Allen Declaration, ¶ 3 (ER-68).

Section 4 of the FAA requires that "[i]f the making of the arbitration agreement . . . be in issue, the court *shall proceed summarily to the trial thereof*." 9 U.S.C. § 4 (emphasis added). However, Epic immediately appealed the district court's nonfinal ruling, *see* ER-162 (October 21, 2024 notice of appeal), thereby depriving the district court of jurisdiction and preventing it from proceeding "summarily" to trial to determine whether E.V.A. agreed to arbitrate in this case, as required by § 4.[7]

The result of Epic's premature pursuit of this appeal – and its failure to proceed "summarily" to trial to resolve the issues identified by the district court – is that the district court's October 2, 2024 Order should be vacated as "improperly issued," and this case should be remanded for trial to resolve those issues. *Hansen,* 1 F.4th at 672-73.[8] *Hansen* makes it clear that issuance of such a "nonfinal" order contravenes § 4. As the Court stated:

> To implement this language [of § 4], *once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved*.

---

[7] *See, e.g., Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 200 (9th Cir. 1977) ("The general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal").

[8] The Court interpreted "summarily" to mean that the trial must be "done or occur[ ] without delay or formality: quickly executed." *Id.*

13

*Id.* at 672 (emphasis added); *see also Knapke v. PeopleConnect, Inc.,* 38 F.4th 824, 831 (9th Cir. 2022) ("a court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved"); *Stendal v. Memorial Health Svcs.*, No. 23-3561, 2024 WL 5102871, at *1 (9th Cir. Dec. 13, 2024) (vacating order denying arbitration and remanding for determination of arbitrability); *Leahy v. CMH Homes, Inc.*, 2:24-cv-01855, 2025 WL 318080, at *1 (E.D. Cal. Jan. 28, 2025); *Emelyanenko v. Strafach*, 23-cv-00570, 2024 WL 4336522, at *4, *7, *8-9 (N.D. Cal. Sept. 27, 2024) (following *Hansen*).

The *Hansen* court noted that the FAA, in § 16(a)(1)(B), authorizes courts of appeal to entertain appeals from "interlocutory orders" denying petitions to compel arbitration, and that such authority includes "jurisdiction over any order denying a motion to compel arbitration," whether or not final. *Id*. at 671.[9] But it held that "*[n]othing in § 16 – or § 4 – authorizes appellate courts to adjudicate the district*

---

[9] The Court noted that there is a split in the federal circuits over whether this is the case, with the Sixth Circuit holding that there is no such jurisdiction, *Taylor v. Pilot Corp.*, 955 F.3d 572, 576 (6th Cir. 2020), and the Third, Seventh, Eighth, Fourth, D.C and Federal circuits holding that there is. *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 103 (3d Cir. 2000); *Boomer v. AT&T Corp.*, 309 F.3d 404, 412 (7th Cir. 2002); *McLaughlin Gormley King Co. v. Terminix Int'l Co., LP*, 105 F.3d 1192, 1193 (8th Cir. 1997); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 635-36 (4th Cir. 2002); *Jin v. Parsons Corp.*, 966 F.3d 821, 823-24 (D.C. Cir. 2020); *Microchip Technology Inc.v. U.S. Philips Corp.*, 367 F.3d 1350, 1355 (Fed. Cir. 2004). In *Hansen*, this Circuit joined those which have found jurisdiction.

14

*court's decision that it cannot make a final ruling on the motion to compel until genuine issues of material fact over the making of the arbitration agreement have been resolved at trial.*" *Id*. at 673 (emphasis added).

Based on this conclusion, the Court found that an "appeal of a district court's nonfinal order determining that there are genuine issues of material fact and denying a motion to compel constitutes an end-run around the limitations in § 4;" that it "would defeat § 4's mandate that the district court should 'proceed summarily to . . . trial;'" and that it would "frustrate[ ] the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Id*. at 673, citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 23 (1983). Finally, the Court found that "assessing the merits of an appeal before the district court conducted a trial ... would be 'a pointless and wasteful burden on the supposedly summary and speedy procedures prescribed by the [FAA].'" *Id*. (quoting *Moses H. Cone*, 460 U.S. at 27.

Based on these considerations, the Ninth Circuit (1) rejected the *Hansen* defendant's challenge to "the district court's determination that there are genuine disputes of material fact on arbitrability;" (2) vacated the district court's "erroneous denial of the motion to compel;" and (3) remanded for the district court to "proceed summarily to the trial" on the question of whether the party opposing arbitration was bound by the relevant arbitration agreement. 1 F.4th at 673.

15

*Hansen* is indistinguishable from this case. Here, in an explicitly nonfinal order, the district court denied Epic's motion to compel arbitration "without prejudice" based on its conclusions, among others, (1) that Plaintiffs had not been given an opportunity to respond to facts asserted in the Shaw Reply Declaration submitted by Epic; and (2) that there was insufficient information in the record regarding, *inter alia*, the applicability of equitable estoppel and agency issues.[10] Accordingly, the Court should vacate the October 2, 2024 Order and remand this matter for trial on the issue of whether a binding arbitration agreement was formed between E.V.A. and Epic. *Hansen*, 1 F.4th at 673.

## II. EPIC'S EFFORTS TO SUBJECT E.V.A., A NON-SIGNATORY MINOR, TO THE EULA'S ARBITRATION PROVISIONS SHOULD BE REJECTED.

Even if the Court, contrary to *Hansen*, should choose to "assess[ ] the merits of [this] appeal before the district court [has] conducted the trial" mandated by § 4 of the FAA, *see* 1 F.4th at 673, Epic's own arguments demonstrate that the district court was correct in finding that its decision on Epic's Motion should be deferred pending development of a "more complete factual record." Order at 17 (ER-19).

---

[10] To the extent this is a factual determination, the Court should review it "for clear error." *Balen,* 583 F.3d at 652.

It is well-established that the party seeking to compel arbitration bears the burden of proving, by a preponderance of the evidence, the existence of an agreement to arbitrate. *Ashbey v. Archstone Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Here, virtually all of Epic's arguments are grounded in the notion that E.V.A. – a minor who never signed the EULA – is nonetheless bound by it because her mother, Stephanie Allen, stated in her declaration in this case that E.V.A. "has played Fortnite using an account that [Ms. Allen] set up . . . ." ER-68.

Based on this meager factual predicate, Epic argues (1) that the issue of whether E.V.A. – as a non-signatory minor – agreed to arbitrate her dispute with Epic falls within the agreement's "delegation clause" and must, therefore, be decided by an arbitrator (Epic Br. 17-21); and (2) that – even if the issue were a non-delegable question of contract formation (which Epic denies) – the Court should find (a) that Ms. Allen had actual or apparent authority to bind E.V.A. to the EULA's arbitration requirement (Epic Br. 22-27); and/or (b) that E.V.A. should be equitably estopped from avoiding the EULA's arbitration requirement. *Id*. 27-37.

These arguments – which the district court never ruled on[11] – should be rejected first, because the issue of whether E.V.A., as a non-signatory minor, assented to the EULA goes to whether any agreement to arbitrate was formed between E.V.A. and Epic and is, therefore, non-delegable, *see, e.g., Ahlstrom,* 21 F.4th at 635 ("parties cannot delegate issues of [contract] formation to the arbitrator"); and second, the agency and equitable estoppel issues that Epic now raises on appeal present the very same factual issues that the district court reserved for resolution at trial. *See* Order at 17 (ER-19) (noting, *inter alia*, lack of information that "may be relevant to doctrines of equitable estoppel or agency").

### A.  The Issue of Whether E.V.A., as a Non-Signatory Minor, Is Subject to the EULA's Delegation Clause Is a Non-Delegable Issue of Contract Formation.

Epic first argues that the "delegation clause" of the EULA's arbitration agreement delegates questions of the "validity, enforceability, or scope'" of the

---

[11] It is, of course, the "general rule" that a "federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). This is "essential in order that all parties may have the opportunity to offer all the evidence they believe relevant to the issues." *Id.*, quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). Here, the district court explicitly invited Epic to present evidence relevant to its effort to bind E.V.A. to the EULA (ER-19); however, Epic chose to file this appeal instead (ER-162).

agreement to the arbitrator, Epic Br. 18,[12] and that the district court erroneously failed to consider whether E.V.A.'s contention that she was not bound to the EULA, was "a dispute over the scope or enforceability of the EULA . . . ," and should have been delegated to the arbitrator. *Id.* Epic further argues that – because E.V.A.'s contention that she never signed the EULA applied to the EULA as a whole, and was not specifically directed to the EULA's arbitration provision – the challenge should have been relegated to arbitration. *Id.* These arguments should be rejected.

"[A]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83. It is, therefore, well-established that *"parties cannot delegate issues of [contract] formation to the arbitrator,"* because "[i]f no agreement to arbitrate was formed, then there is no basis upon which to compel arbitration." *Ahlstrom*, 21 F.4th at 635 (emphasis added)*; see Granite Rock Co. v. Int'l Brotherhood of Teamsters,*

---

[12] The EULA's "delegation clause" provides, in pertinent part:

> You and Epic agree to submit all Disputes between You and Epic to individual binding arbitration. "Dispute" means any dispute, claim, or controversy (except those specifically exempted below) between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section. (ER-113.)

19

561 U.S. 287, 297 (2010) (issues reserved for the courts "always include" whether an arbitration agreement was formed).

The federal courts apply state law principles to determine whether a contract has been formed, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009), and, in particular, whether a minor, like E.V.A., can be bound to arbitrate despite not having signed a putative arbitration agreement. *See B.F. v. Amazon.com, Inc.*, 858 Fed. App'x. 218, 220 (9th Cir. 2021) (applying Washington law). Generally, a district court sitting in diversity applies the choice-of-law rules of the forum state, *Lazar v. Kroncke*, 862 F.3d 1186, 1194 (9th Cir. 2017), which, in this case, is California.[13] California choice of law is determined through a "government analysis" approach, which considers, as a first step, whether "the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *See Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006).

---

[13] Although the EULA contains a choice of law provision selecting North Carolina law, *see* ER-112, that provision, which is itself contractual, cannot be relied on to determine whether a contract has been formed. *See, e.g., Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("before we can determine the validity of the United States choice of law provision in the contract . . . , we need to figure out which country's law controls the issue of contract formation").

Here, Washington (E.V.A.'s domicile) and California (the forum state) appear to be the two most "potentially affected" jurisdictions, and courts have generally found that the laws of contract formation in California and Washington "are materially the same." *See Jackson v. Amazon.com, Inc.*, 559 F. Supp.3d 1132, 1138 (S.D. Cal. 2023), *aff'd*, 65 F.4th 1093 (9th Cir. 2021).[14]  Accordingly, no further choice of law analysis is necessary.

In both Washington and California, the general rule is that "nonsignatories to a contract are not bound by an arbitration clause." *Townsend,* 268 P.3d at 924 (Stephens, J., concurring/dissenting);[15] *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1103-04 (9th Cir. 2006) (California law: the "general rule [is] that a non-signatory is not bound by an arbitration clause").  And "a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit." *B.F. v. Amazon,* 858

---

[14]  Epic agrees. Epic Br. 22-34 (applying Washington and California law).

[15]  As this Court has noted, Washington Supreme Court Justice Stephens' "concurring/dissenting" opinion – which held that the nonsignatory children "are not bound to arbitrate" – was the majority opinion in *Townsend*.  *B.F. v. Amazon*, 558 Fed. App'x. at 220-21 & n.1.  Although there has been "some confusion" about that (due to the Washington Supreme Court's "unconventional practices"), it is clear that the prevailing view was that the nonsignatory children in *Townsend* were not compelled to arbitrate.  *Id*.; *see also Norwood v. MultiCare Health System*, 548 P.3d 978, 985 ¶ 36 (Wash. App. 2024) ("A majority of the Supreme Court [in *Townsend*], held that the children were not bound by the arbitration clause").  Epic concedes that Justice Stephens' opinion in this regard is the majority opinion.  Epic Br. 30, n. 6.

Fed. App'x. at 220, citing *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 229 (Wash. 2009) (en banc).

Both Washington and California also recognize "limited exceptions" to this general rule grounded in principles of equitable estoppel and agency law. *See, e.g., Townsend*, 268 P.3d at 912 (noting Washington's exception where equitable estoppel applies); *Knapke*, 38 F.4th at 831-35 (Washington's agency law exception); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (California estoppel and agency law exceptions). But Epic, in the first instance, seeks to avoid these fact-intensive issues by arguing (1) that "[c]ontract formation is not at issue" on this appeal because Stephanie Allen, E.V.A.'s mother, does not dispute that she assented to the EULA "when she created the [Epic] account," Epic Br. 1, 19 (citing the Allen Declaration, ¶ 3 [ER 68]); and (2) that the EULA's delegation clause – which covers issues of "enforceablility, or scope" of the arbitration agreement – is sufficiently broad to cover the present dispute. Epic Br. 18. These arguments should be rejected.

First, contrary to Epic's contention, "contract formation" was very much at issue below. According to Epic's own declarant, Joshua D. Shaw, the two accounts which he has (tentatively) identified as potentially belonging to Stephanie Allen, were

created, respectively, on November 19, 2017, and December 20, 2017.[16]  However, Epic did not add its arbitration provision to the EULA until March 15, 2019.  Shaw Dec. ¶ 5 (ER-99).  Moreover, the Class Period in the underlying class action runs from July 21, 2017 through February 20, 2023, *see* Complaint ¶ 1 (ER-123).  Accordingly, to the extent that E.V.A.'s claims are grounded in any use of *Fortnite* that took place between November/December 2017 and March 15, 2019, they cannot be subject to arbitration because the EULA did not contain an arbitration agreement applicable to Epic's alleged misconduct during that period.

Second, the issue is not, as Epic implies, whether an agreement to arbitrate was formed between Stephanie Allen and Epic.  It is whether one was formed between E.V.A. – a minor non-signatory – and Epic.  And, as at least one court has specifically held, that issue is a non-delegable issue of contract formation.  *See Global Travel Mktg., Inc. v. Shea*, 908 So.2d 392, 403 (Fla. 2005) ("the question of whether a minor child or minor child's estate may be bound by an agreement to arbitrate made by a parent or guardian on the child's behalf is a question of contract formation – whether a valid agreement to arbitrate exists").

---

[16] *See* Declaration of Joshua D. Shaw, dated May 16, 2024 ("Shaw Dec."), ¶18 (ER-102) ("In March 2019, Epic Games updated the EULA to include (among other things) an arbitration requirement;" the updated EULA became effective on March 15, 2019).

Third, as shown above, both Washington and California apply the general rule that a non-signatory is <u>not</u> bound by an arbitration agreement unless some exception (in particular, agency or equitable estoppel) applies. *See B.F. v. Amazon.com, Inc.*, 858 Fed. App'x. at 220; *Knapke,* 38 F.4th at 832-33; *Townsend,* 268 P.3d at 922; *Murphy*, 724 F.3d at 1229-33. It is Epic's burden – as the party seeking to compel arbitration under the EULA's arbitration provision – to show that one of those exceptions applies. *Ashbey,* 785 F.3d at 1323. However, while Epic addresses the exceptions elsewhere (Epic Br. 21-37), it simply ignores the general rule in connection with its "delegation" argument without establishing any exception to that rule.

Fourth, while Epic asserts arguments based on the supposed breadth of the EULA's delegation clause (which delegates, *inter alia*, "scope" and "enforceability" issues to arbitration), those arguments simply beg the question of whether E.V.A. ever became a party to the EULA (including its delegation clause) in the first place. If she did not, the breadth of the EULA's delegation provision is irrelevant.[17]

Epic further argues that – because E.V.A.'s status as a non-signatory affects the EULA as a whole (and is not limited to the EULA's arbitration agreement) – it cannot

---

[17] Notably, "where the question is whether a particular party is bound by the arbitration agreement, the liberal policy favoring arbitration agreements . . . is inapposite." *Waymo LLC v. Uber Technologies*, *Inc.*, 252 F. Supp.3d 934, 937 (N. D. Cal. 2017).

absolve her from a duty to arbitrate. Epic Br. 18-19. According to Epic, this means that the most basic issue of contract formation – *i.e.*, whether E.V.A. actually assented to the EULA and its arbitration provision – must be relegated to arbitration. This is incorrect. *Id*.

This Court has synthesized several Supreme Court decisions in this area – *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) and *Granite Rock* – as follows:

> *First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause.* Next a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (emphasis added).

The Supreme Court has also more recently confirmed this reading of its precedents in *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150-51 (2024), where the court addressed the so-called "severability principle" on which Epic relies:

> The severability principle establishes that a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole. But this rule does not require that a party challenge <u>only</u> the arbitration or delegation provision. Rather, *where a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that*

*challenge*. Again, basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute.

*Coinbase*, 602 U.S. at 150-51 (underscoring in original; italics added).

Finally, Epic cites two district court cases in its Brief (pp. 19-20), which it claims "compel arbitration in circumstances similar to E.V.A.'s" – *Mendieta v. Credit Mgmt., L.P.*, 2:23-cv-2512, 2023 WL 6786844 (C.D. Cal. Sept. 19, 2023), and *Sanchez v. Nintendo of Am. Inc.*, 20 Civ. 6929 (N.D. Cal. Mar. 13, 2021) (March 13, 2021 Hearing Transcript) (ECF # 46). However, *Mendieta* actually supports the opposite proposition – *i.e.*, that the "court" must decide whether a non-signatory is bound to an arbitration provision. There, the plaintiff, Eddy Mendieta, sued Charter Communications alleging that debt collectors acting on behalf of Charter violated the Fair Debt Collection Practices Act. Charter sought to compel arbitration based on an arbitration agreement that Eddy's brother, Carlos, had agreed to when the Mendieta's first Charter account was opened. *Id*. at *1. Shortly after opening that account, Carlos died; however, Charter continued providing services to the Mendieta household, and Eddy, at various times, wound up making the monthly payments due on the account and (along with others) used the services. He also dealt with Charter when the household switched over to AT&T and then switched back to Charter, at

which time Eddy opened a new Charter account. *Id*. at *1-2. Eddy argued that, "as a non-signatory and passive user of the Charter services at issue," he was not bound by the arbitration agreement. Charter argued that Eddy was equitably estopped from avoiding arbitration. *Id*. at *3.

The court prefaced its legal discussion by stating that – while a court need not resolve ambiguities about the <u>scope</u> of the arbitration agreement "*[t]he Court still must determine whether the parties are bound by the agreement*," *id*. at *3 (emphasis added). This, of course, is the exact opposite of Epic's argument here – *i.e.*, that an arbitrator should make that determination.[18] Notably, the court in *Mendieta* also engaged in a lengthy, fact-based discussion in an effort to assess Charter's argument that Eddy was equitably estopped from avoiding arbitration, thus demonstrating the fact-intensive nature of the issue.[19]

---

[18] Recognizing this problem, Epic seeks to distinguish its own case by offering a lengthy explanation of how the "*Mendieta* court seemed to conflate the issues of delegation and estoppel," and failed to "'delegate' anything to the arbitrator." Epic Br. at 20, n. 5. In fact, the *Mendieta* court correctly ruled that the court – not the arbitrator – must determine whether a non-signatory is bound (*i.e.*, whether a contract was formed).

[19] Specifically, the court conducted a detailed factual review of the years-long relationship between Charter, Carlos and Eddy Mendieta, as well as the Mendieta household to determine who enjoyed the use of Charter's service, who paid for it (over several years), and Eddy's actual knowledge of Charter's terms of service. *See* 2023 WL 6786844, at *1-4.

The other decision cited by Epic, *Sanchez v. Nintendo*, is unpublished, and is only available in an oral order rendered by the district court. *See Sanchez*, Case No. 20-cv-06929 (N.D. Cal.) (Hearing Tr., March 13, 2021, ECF # 46). There, the court – after candidly admitting that its oral decision was "not my best work," and that the court "hadn't read all the cases" – sent the issue of "whether or not there is a properly formed arbitration agreement" to the arbitrator. ECF #46, Hearing Tr. 24-26. This is simply incorrect. *See, e.g., Ahlstrom,* 21 F.4th at 635. Notably, after the issue of contract formation was (improperly) referred to arbitration in *Sanchez,* the arbitrators determined that the non-signatory minors were <u>not</u> bound by the arbitration agreement, and the matter was referred back to the court for litigation. *See Sanchez v. Nintendo of Am.*, 2022 WL 4099154, at *1 (N.D. Cal. Sept. 7, 2022).

**B.** **The Question of Whether E.V.A., As a Non-Signatory Minor, Can Be Bound to the EULA's Arbitration Provision Turns on Unresolved Fact Issues.**

Epic next argues that – even if a court (as opposed to an arbitrator) were to decide whether a binding arbitration agreement was formed between E.V.A. and Epic – that court should compel E.V.A. to submit to arbitration because (1) Stephanie Allen, in setting up her own Epic account, had "actual or apparent" authority to bind E.V.A. to arbitrate; (2) E.V.A. is equitably estopped from avoiding arbitration because she "has played Fortnite" on her mother's account; and (3) that E.V.A.'s "gameplay

28

estops her from disputing that the EULA binds her, regardless of whether she continues to play." Epic Br. 21-36.

As "a party seeking to compel arbitration," Epic, once again, has the "burden under the FAA to show . . . the existence of a valid, written agreement to arbitrate." *See, e.g., Ashbey,* 785 F.3d at 1323. Here, Epic's arguments should be rejected because they implicate the same unresolved fact questions that led the district court to issue its Order denying Epic's Motion "without prejudice to Defendant renewing such a motion based on a more complete factual record." Order at 17 (ER 19).

> **1. Unresolved Issues of Material Fact Preclude Any Finding that Stephanie Allen Had Actual or Apparent Authority to Bind E.V.A. to the EULA's Arbitration Agreement.**

In support of its agency arguments, Epic asserts (1) that "E.V.A. wanted to play *Fortnite*" at relevant times; (2) that "Ms. Allen, her parent, facilitated this by setting up an Epic Games account *for E.V.A.'s use*;" and (3) that Ms. Allen "had actual authority because *she sought to facilitate E.V.A.'s desire to play Fortnite*, and the only way for her to do that was to create an account and accept the EULA." Epic Br. 22-23 (emphasis added). However, the only basis for these assertions is the following statement in ¶ 3 of Ms. Allen's Declaration (ER-67-68):

> My child, EVA, is under the age of 13 and has played Fortnite using an account that I set up with my email address during the class period.

Clearly, the Allen Declaration does not say that E.V.A. "wanted to play *Fortnite*" when Stephanie set up her *Fortnite* account; it does not say why Ms. Allen set up her account; it does not say that Ms. Allen "facilitated" E.V.A.'s supposed desire "by setting up an Epic Games account for E.V.A.'s use;" or that "Ms. Allen sought to facilitate E.V.A.'s desire to play *Fortnite*;" or that "the only way for her to do that was to create an account and accept the EULA." At best, Epic's unsupported assertions are rebuttable inferences that Epic seeks to draw from Ms. Allen's Declaration. Thus, Epic's agency arguments are unsupported by the record.

Moreover, under Epic's own view of the law, the Allen Declaration, without more, cannot support its position that Ms. Allen had either "actual" or "apparent" authority. According to Epic, for Ms. Allen to have had "actual authority" to act on E.V.A.'s behalf, it must have been the case that "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Epic. Br. 23, citing *Revitalization Partners, LLC v. Equinix, Inc*., 16 Civ. 1367, 2017 WL 823291, at *4 (W.D. Wash, Mar. 2, 2017) (quoting Restatement (Third) of Agency § 2.01 (2006)). But nothing in the Allen Declaration reveals what "manifestations" (if any) E.V.A., as Epic's presumed "principal," made to her mother with respect to opening an Epic account or what Ms. Allen, the presumed "agent,"

30

"reasonably believed" based on such manifestations. Similarly, as to "apparent authority," Epic claims that arises where "objective manifestations of the principal [E.V.A.] 'cause the one claiming apparent authority to actually, or subjectively, believe that the agent has the authority to act for the principal' and such belief is objectively reasonable." Epic Br. 23, citing *Mohr v. Grantham*, 262 P.3d 490, 498 (Wash. 2011) (en banc). But, once again, nothing in the Allen Declaration (or elsewhere in the record) provides even the slightest support for these factual predicates to "apparent authority."

Further, as shown above, Joshua Shaw, Epic's declarant, has attested (1) that the two Epic accounts that Mr. Shaw attributes to Ms. Allen, were opened, respectively, on November 19, 2017 and December 20, 2017 (Shaw Dec. ¶ 18 [ER-102]); but (2) that Epic did not add an arbitration agreement to its EULA until March 15, 2019 (*id*. ¶ 5 [ER 99]) – *i.e.*, almost a year and a half <u>after</u> Ms. Allen is claimed to have opened her Epic accounts. Accordingly, no claims based on gameplay in Ms. Allen's account prior to March 15, 2019 can be subject to arbitration (no matter who was playing), and any actions that Ms. Allen may have performed as an "agent" for E.V.A. could (at most) only be relevant if they occurred on or after March 15, 2019.

Finally, the decisions that Epic cites in support of its agency arguments, *see* Epic Br. 24-27, generally reflect that the relevant agency issues are fact-intensive. *See,*

31

*e.g., Nicosia v. Amazon.com, Inc.*, 384 F. Supp.3d 254, 258-61 (E.D.N.Y. 2019) (post-discovery motion; court relies extensively on deposition testimony); *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389-90 (4th Cir. 2024) (remanding to the district court to resolve disputed facts); *Yeh v. Tesla, Inc.*, 23-cv-01740, 2023 WL 6795414, at *7-8 (N.D. Cal. Oct. 12, 2023) ("[t]here is no bright line rule under California law . . . that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement . . . . [C]ourts have reached different conclusions based on specific facts. . . .");[20] *see generally Heidbreder v. Epic Games, Inc.*, 438 F. Supp.3d 591, 595 (E.D. N.C. 2020) ("Whether an agent possesses actual or apparent authority to bind the principal to an arbitration provision is a question for a factfinder" (cleaned up).

---

[20] Epic also cites *Chan v. Charter Comm's Hldg. Co.*, No. EDCV 15-0886, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015), where the court – after finding that the children involved were "not parties to [the] case," and that the arbitration issue as to them was, therefore "irrelevant" – went on (in dictum) to state that a "preexisting parent/child relationship" made it "equitable" to disregard the "general rule against compelling nonsignatories to arbitrate." Since the court could not compel non-parties to arbitrate, it is unclear why the court expressed this view. However, treating a parent/child relationship, without more, as dispositive, is inconsistent with *Yeh's* conclusion that "there is no bright line rule" in California – a conclusion supported by *In re Ring LLC Privacy Litig.*, CV 19-10899, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021), where the court, applying California law, declined to compel non-signatory children to arbitrate. *Id.* at *8 (non-signatory children only bound to arbitrate where contracts were made on their behalf for "medical care or school activities").

32

The only Ninth Circuit decision cited by Epic is *Tice v. Amazon.com, Inc.,* 845 Fed. App'x. 535 (9th Cir. 2021), which is, at best, marginally relevant. There, the district court had compelled a non-signatory wife to arbitrate some (but not all) of her claims under a contract between Amazon and her husband, finding she was equitably estopped from avoiding arbitration. *Id*. at 537. In its majority opinion, this Court – without discussing the effect of the wife's non-signatory status – concluded that the district court had erred in finding that some of the wife's claims were beyond the scope of the arbitration clause. A second opinion concurred "only in the judgment," finding that the plaintiff lacked standing to assert certain of her claims. And a dissenting opinion would have held that "[n]o contract was formed" because the wife was a non-signatory, and the doctrine of equitable estoppel should not apply. *Id*. at 538. *Tice* provides no support for Epic's position here.

Finally, Epic cites a miscellany of cases from New York, Texas, New Jersey and Florida for the "principle that a parent can accept a recreational agreement on behalf of a child and thereby bind the child to arbitrate."[21] None of these cases applies

---

[21] Epic Br. at 26-27, citing *Cutway v. S.T.A.R. Programs, Inc*., 904 N.Y.S.2d 806, 812 (3d Dep't 2010) (contract for child's stay at "boot camp;" held: NY CPLR § 1209 cannot be used by parents to avoid children's otherwise binding obligation to arbitrate) ; *Taylor Morrison of Texas, Inc. v. Ha*, 660 S.W.3d 529, 534 (Tex. 2023) (non-signatory minor can be bound to arbitrate where "direct benefits" estoppel applies); *Hojnowski v. Vans Skate Park*, 901 A.2d 381,392 (N.J. 2006) (child asserts claims for injuries sustained at amusement park; public policy favoring arbitration

either California or Washington law. Moreover, other courts have held that children are <u>not</u> bound by their parents' agreements to arbitrate. *See, e.g., Coatney v. Ancestry.com DNA LLC*, 93 F.4th 1014, 1029 (7th Cir. 2024) (denying arbitration based on Illinois' "strong presumption . . . disfavoring the binding of non-signatories to arbitration;" held: children not bound by their guardians' agreements to arbitrate); *Fleetwood Enterprises , Inc. v. Gaskamp*, 280 F.3d 1069, 1076-77 (5th Cir. 2002) ("because the . . . children are not signatories to the sales contract, are not third-party beneficiaries of the agreement . . . , and are not suing on the basis of the contract, they are not bound by the arbitration agreement signed by their parents"); *Billieson v. City of New Orleans*, 863 So.2d 557, 562 (La. Ct. App. 2003) ("a nonsignatory to an arbitration provision in a contract can only be bound by the terms of an arbitration clause if the nonsignatory is asserting claims that require reliance on the terms of the written agreement").

Some of the cases cited by Epic are also distinguishable because the arbitration clauses at issue use language different from that in Epic's EULA. Thus, in *Global Travel*, the parent explicitly signed the contract on behalf of the minor, 908 So.2d at

---

supports binding minor children to parents' agreement to arbitrate); *Global Travel,* 908 So.2d at 403 (Florida law: arbitration agreement incorporated in a commercial travel contract is enforceable against minor's estate for a tort claim arising from the contract; "narrow" decision).

395-96, and in *Hojnowski*, 901 A.2d at 384, the contract spoke in terms of the minor as a party and required a parental signature. *Cf. Nkemakolam v. St. John's Military School*, 876 F. Supp.2d 1240, 1244 & n.2 (D. Kan. 2012) (noting a similar language differences).

Finally, all of the cases relied on by Epic involve situations in which the agreements were unambiguously made for the benefit of the minors involved. *Compare S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp.3d 1019, 1037 (S.D. Cal. 2021) (distinguishing *Cutway*). Here, notwithstanding Epic's distortions of the Allen Declaration, Epic Br. 22, 24, there is no evidence that Ms. Allen set up her *Fortnite* account for E.V.A.'s benefit (as opposed to her own benefit, or that of her other child, M.A.). Although E.V.A. "has played *Fortnite*" using Ms. Allen's account (ER-68), that does not mean, as Epic claims, that "Ms. Allen's acceptance of the EULA also had a beneficiary purpose" or that "it was done specifically so that E.V.A. could play *Fortnite* in the account." Epic Br. 25. The record does not say that, nor does it show why Ms. Allen set up her accounts, how often Ms. Allen played, or how often E.V.A. (or her sibling M.A.) played.

In sum, neither the law nor the record in this case supports Epic's claim that Ms. Allen entered into the EULA acting as E.V.A.'s agent.

### 2. Unresolved Factual Issues Preclude Any Determination that E.V.A. Is Equitably Estopped from Avoiding Arbitration.

Epic next argues that E.V.A. – despite being a non-signatory to the EULA – is nonetheless equitably estopped from avoiding its arbitration requirement because she "accepted the benefits of the contract . . . by playing *Fortnite* in Ms. Allen's account." Epic Br. 27.

Epic asserts that Washington law applies to the equitable estoppel issues in this case, *see id.* 28 ("the estoppel principles at issue here are those of Washington State common law"), and – assuming that is the case – the controlling decision is *Townsend*, 268 P.3d at 922. In *Townsend*, several plaintiff-homeowners sued the company that had built and sold them their houses, alleging that construction defects caused them personal injuries. Their claims – which they brought on behalf of themselves and their minor children – were grounded in "outrage, fraud, unfair business practices, negligence, negligent misrepresentation, rescission and breach of warranty." *Id.* at 918-19. The purchase agreement contained an arbitration agreement, and the company sought to compel arbitration. *Id*.

The Washington Supreme Court held that the plaintiffs' non-signatory minor children were <u>not</u> bound to arbitrate their claims.  *Id.* at 924.[22]  While the majority opinion acknowledged that "a party who knowingly exploits a contract for benefit cannot simultaneously avoid the burden of arbitrating," *id*. at 924, it held that non-signatories do not knowingly exploit a contract when they bring claims that "do not arise out of the contract" – *i.e.*, when the non-signatory brings claims that "sound in tort and allege personal injuries." *Id*. at 924.  A majority of the court concluded that – because the children were asserting claims based on "independent dut[ies]" that did not "arise from" the agreement containing the arbitration clause, they were not bound to arbitrate.  *Id*.

Similarly, this Court, applying Washington law, declined to compel non-signatory children to arbitrate claims based on state wire-tapping statutes under a contract between their parents and Amazon that contained an arbitration agreement. *B.F. v. Amazon*, 858 Fed. App'x. at 220-21 (relying on *Townsend*).  The Court found:

> Plaintiffs are not asserting any right or looking to enforce any duty created by the contracts between their parents and Amazon.  Instead, Plaintiffs bring only state statutory claims that do not depend on their

---

[22] As shown above, the "concurring/dissenting" opinion of Justice Stephens (268 P.3d at 924), is the court's majority opinion on the equitable estoppel issue.  *See B.F. v. Amazon*, 858 Fed. App'x. at 220-21 & n.1.

37

parents' contracts . . . . [I]rrespective of those agreements, Amazon would owe to Plaintiffs the legal duty that Plaintiffs claim has been violated.

*Id*. at 221; *see also Norwood*, 548 P.3d at 984-85.[23]

The same is true here. The claims asserted by E.V.A. in this action are grounded in the common law of Washington (providing recovery for intrusion upon seclusion), Complaint, Claim One (ER-148-49), and in a statute – Washington's Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.020, *et seq*., Complaint, Claim Five (ER-154-58). E.V.A.'s state law claims also parallel (but are not based upon) standards and legal duties established in the COPPA. *See* ER-131-44. E.V.A.'s claims clearly do not arise out of the EULA. As in *Townsend* and *B.F. v. Amazon*, Epic would owe E.V.A. the same legal duties – *i.e.*, the same common law privacy and statutory duties – irrespective of the EULA.

Anticipating this argument, Epic advocates a rule that a non-signatory to an arbitration agreement is bound to arbitrate if he or she "knowingly exploits" the contract in which the arbitration agreement is contained, and it defines "knowing

---

[23] As the court explained in *Norwood*:

> The majority [in *Townsend*] reasoned that the children's claims were not grounded in the builder's duty to the children in contract. . . . Rather, the builder owed the children a duty as a building professional who owes a duty to individuals who foreseeably sustain personal injuries as a result of negligent acts. . . . (*Id*.)

38

exploitation" as occurring whenever the non-signatory "obtained a direct benefit" which he or she "could not have done" "but for" the underlying contract. Epic Br. 28-30, citing *Marshall v. Hipcamp, Inc*., 735 F. Supp.3d 1283, 1294-95 (W.D. Wash. 2024), *Ligeri v. Amazon.com Inc*., No. 23 603, 2024 WL 3638241, at *8 (D. Conn. Aug. 2, 2024) (Washington law), *app. filed* Sept. 6, 2024 (2d Cir. No. 24-2337); *Atencio v. Bird Rides Inc*., 23 Civ. 4787, 2023 WL 8168955, at *2 (C.D. Cal. Nov. 3, 2023) (California law).[24]

The problem with Epic's purported rule is that it is contrary to controlling authority. If applied, it would have required the non-signatory children in *Townsend* and *B.F. v. Amazon* to arbitrate; however, the courts in both cases held the opposite. Thus, the minor non-signatories in *Townsend* "knowingly exploited" the construction contracts signed by their parents (by living in and enjoying the houses), and they received a "direct benefit" which they could not have enjoyed "but for" that contract.

---

[24] All these cases are distinguishable. In *Marshall* the court recognized that "[c]ourts applying Washington law have determined that equitable estoppel does not apply where plaintiffs bring claims based on statutory rights, rather than rights under the contract." 735 F. Supp.3d at 1295, n. 3. In *Ligeri*, a Connecticut district court applying Washington law – after a two day evidentiary hearing, and after finding that plaintiffs (during a multi-year relationship with Amazon) were on inquiry notice of their duty to arbitrate – held that equitable estoppel barred plaintiffs from refusing to arbitrate. *Ligeri*, 2024 WL 3638241, at *4-9. And, in *Atencio*, the court applied California law, and the plaintiff – as lessor of a scooter – sought "to rely on the Rental Agreement" that contained the arbitration agreement. 2023 WL 8168955, at *2-3.

However, the Washington Supreme Court held they were not equitably estopped. Similarly, in *B.F. v. Amazon*, the non-signatory children obtained the benefits of the contract their parents had entered into with Amazon, and "but for" that contract, they would not have been able to enjoy that benefit.[25] In fact, the courts in both cases found that – because the claims asserted by the minor non-signatories were grounded in tort or in statute, and were not based on the contracts containing the relevant arbitration provisions – there was no basis for compelling arbitration.

Finally, Epic offers a "policy" argument, asserting that – if it cannot enforce adhesion contracts against non-signatory children – "all contractual rules governing use of online accounts" could be avoided "simply by having third parties create accounts and then using them. . . ." Epic Br. 30-32. Epic offers no factual support for this broad speculation. Nor does it address the other side of this supposed policy argument – namely, the fact that the internet is alive with unlawful schemes in which

---

[25] Epic seeks to distinguish *B.F. v. Amazon*, 858 Fed. App'x. at 220-21, where this Court held that non-signatory children were not bound by arbitration agreements signed by their parents in purchasing Amazon's voice-activated Alexa service. It argues that "the plaintiff children [in *B.F.*] neither intended to use the [Alexa] devices nor were authorized by their parents to do so." Epic Br. 32. In fact, however, the district court decision in *B.F.* recites that the children/plaintiffs were authorized by their parents to use Alexa, 2019 WL 9364164, at *3, *6, and that the children knowingly used Alexa, by "affirmatively ask[ing] Alexa to help with their homework, or to find music they liked." *Id.* at *9. Moreover, while Epic states that "Ms. Allen authorized E.V.A. to use the [*Fortnite*] account she created," there is no record evidence that was the case, and – even if there were – it would not distinguish *B.F.*

persons like Epic take advantage of unsuspecting minors like E.V.A. to unlawfully obtain money/property/value from vast numbers of children, and then seek to insulate themselves from meaningful liability through the use of anti-class action provisions and arbitration clauses. Indeed, because Epic, as detailed in E.V.A.'s Complaint, ¶¶ 34-94 (ER-128-44), unlawfully used *Fortnite* to lure underage children (like E.V.A.) to play, and thereby to give up their protected Personal Information in violation of the common law and the Washington statute cited in the Complaint, Epic should not be permitted to burden E.V.A. with a duty to arbitrate – especially under the aegis of an "equitable" doctrine. It is well-established that a "party asserting the defense [of equitable estoppel] must have clean hands – be free from fault in the transaction at issue." *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 841 (Wash. App. 2011); *see also Kramarevcky v. Dept. of Soc. and Health Svcs.*, 863 P.2d 535, 538, n.1 (Wash. 1993) (en banc) (same).[26] But, as the Complaint demonstrates, Epic is anything but "free from fault," and factual issues abound with respect to whether it should be permitted to assert the defense of "equitable estoppel."

---

[26] "Generally, equitable estoppel is not favored and the party asserting estopped must prove each of its elements by clear, cogent, and convincing evidence." *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 853 P.2d 913, 918 (Wash. 1993) (en banc) (cleaned up). "Unless only one reasonable inference can be drawn from the evidence, estoppel is a question for the triers of the facts, the jury and the trial court." *Id.* at 737.

### 3. Numerous Unresolved Factual Issues Prevented the District Court from Compelling E.V.A. to Arbitrate.

Finally, Epic argues that the district court's only "specified reason" for declining to compel arbitration was that Epic was unable to "'ascribe' ongoing gameplay in [Stephanie] Allen's account 'to E.V.A..'" Epic Br. 35 (quoting Order, ER 19). This is incorrect.

As shown above, the district court (which was not required to particularize its reasons for seeking a more complete factual record) nonetheless cited several reasons why Epic "has not at this time established an adequate basis for compelling E.V.A. to arbitrate under the EULA." *Id*. These included the fact that E.V.A had not been given an opportunity to respond to the Reply Declaration of Joshua D. Shaw (ER 33-35), which Epic first submitted with its reply brief, and that "other facts . . . may be relevant to doctrines of equitable estoppel or agency" (some of which are identified in the discussion above). The district court also noted that there had been "ongoing gameplay in Ms. Allen's account," but that such gameplay could not be ascribed to E.V.A. (as opposed to Ms. Allen and/or her other child, "M.A.").

Epic argues that the district court, in denying Epic's motion to compel, "erroneously found relevant to [Epic's] motion" the question of whether E.V.A."continued to play *Fortnite* after bringing this lawsuit." Epic Br. 34-35.

However, as shown above, the factual issues, *e.g.*, of whether, when and how often E.V.A. played *Fortnite* in her mother's account (as opposed, *e.g.*, to whether, when or how often her mother and/or her sibling, M.A., played) – were all relevant to whether E.V.A. can or should be bound by the EULA's arbitration agreement.

## CONCLUSION

For the reasons stated above, the Court should reject Epic's appeal, vacate the district court's October 2, 2024 order insofar as it applies to E.V.A., and remand this action to the United States District Court for the Southern District of California for trial in accordance with the requirements of § 4 of the FAA.

Dated: March 4, 2025　　　　　　　Respectfully Submitted

SILVER GOLUB & TEITELL LLP

By */s/ David S. Golub*
　　David S. Golub

and

Patrick Carey
LEXINGTON LAW GROUP, LLP

*Attorneys for Plaintiff-Appellee*
*E.V.A., by and through her Guardian*
*Stephanie Allen.*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff-Appellee E.V.A. states that she is unaware of any related cases that are currently pending before this Court.

Dated:  March 4, 2025        Respectfully Submitted

SILVER GOLUB & TEITELL LLP

By */s/ David S. Golub*
David S. Golub

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure ("FRAP") 32(a)(7)(B) and Ninth Circuit Rule 32-1 because it contains 10,635 words, excluding the portions exempted by FRAP 32(f).

The brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect in 14-point Times New Roman.

Dated:  March 4, 2025                    Respectfully Submitted,

                                         SILVER GOLUB & TEITELL LLP

                                         By */s/ David S. Golub*
                                            David S. Golub

## CERTIFICATE OF SERVICE WHEN ALL CASE PARTICIPANTS ARE CM/ECF PARTICIPANTS

**U.S. Court of Appeals for the Ninth Circuit Docket Number 24-6443**

I hereby certify that I electronically filed the foregoing Opposition Brief of Plaintiff-Appellee E.V.A., by and through her guardian Stephanie Allen, individually and on behalf of all others similarly situated, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 4, 2025.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  March 4, 2025                Respectfully Submitted,

                                    SILVER GOLUB & TEITELL LLP

                                    By */s/ David S. Golub*
                                        David S. Golub