**Docket No. 24-6443**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

E.V.A., by and through her guardian Stephanie Allen,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

EPIC GAMES INC.,

*Defendant-Appellant.*

*Appeal from a Decision of the United States District Court for the Southern District of California,
No. 3:24-cv-00517-RSH-AHG · Honorable Robert Steven Huie*

## REPLY BRIEF OF APPELLANT EPIC GAMES, INC.

JEFFREY S. JACOBSON
FAEGRE DRINKER BIDDLE
 & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
(212) 248-3191

PAUL A. ROSENTHAL
FAEGRE DRINKER BIDDLE
 & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7030

*Counsel for Appellant Epic Games Inc.*



COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER



# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION................................................................................................ 1

ARGUMENT ...................................................................................................... 4

     I.     This Court Should Delegate E.V.A.'s Arguments About Arbitrability to the Arbitrator ......................................................... 4

     II.    Whether E.V.A. Continued to Play Fortnite After She Sued Is Irrelevant to Epic Games' Motion to Compel Arbitration....................... 8

     III.   If the Court Decides This is a Contract Formation Dispute, It Should Still Hold That Ms. Allen's Agreement to the EULA Binds E.V.A. to Arbitrate Her Claims ........................................ 12

          A.     Equitable estoppel prevents E.V.A. from avoiding arbitration of disputes arising from her gameplay in Ms. Allen's account ............................................................... 13

          B.     Ms. Allen also bound E.V.A. to arbitrate as E.V.A.'s apparent and actual agent................................................. 18

     IV.   Whether the EULA's Arbitration Requirement Applies To Claims Arising Before the Effective Date of the Arbitration Provision Is a "Scope" Dispute That Must Be Delegated to the Arbitrator ................................................................................ 21

CONCLUSION ................................................................................................. 22

STATEMENT OF RELATED CASES.......................................................... 24

CERTIFICATE OF COMPLIANCE .............................................................. 25

CERTIFICATE OF SERVICE ....................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Allbaugh v. Perma-Bound*,
   No. 08 Civ. 5713, 2009 WL 10676437 (W.D. Wash. Aug. 14, 2009) ........................ 22

*AT&T Techs, Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................................ 1-2

*B.F. v. Amazon.com Inc.*,
   858 F. App'x 218 (9th Cir. 2021) ............................................................................ 15

*Bielski v. Coinbase, Inc*,
   87 F.4th 1003 (9th Cir. 2023) ................................................................................... 4

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ............................................................................. 1, 4

*Burns v. Wilderness Ventures, Inc.*,
   No. 12 Civ. 4188, 2012 WL 3779069 (N.D. Ill. Aug. 30, 2012) ................................ 21

*Coatney v. Ancestry.com DNA, LLC*,
   93 F.4th 1014 (7th Cir. 2024) ............................................................................ 6, 21

*Courtright v. Epic Games, Inc.*,
   __ F. Supp. 3d __, 2025 WL 558560 (W.D. Mo. Feb. 13, 2025) ............................... 7

*Fleetwood Enterprises, Inc. v. Gaskamp*,
   280 F.3d 1069 (5th Cir. 2002) ................................................................................. 6

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
   97 F.4th 1190 (9th Cir. 2024) .................................................................................. 5

*Global Travel Mktg., Inc. v. Shea*,
   908 So. 2d 392 (Fla. 2005) ....................................................................................... 5

*Hansen v. LMB Mortgage Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) ...........................................................................9, 10, 11

*Heidbreder v. Epic Games, Inc.*,
   438 F. Supp.3d 591 (E.D.N.C. 2020) ..................................................................... 12

*Johnson v. Activision Blizzard, Inc.*,
   No. 24 Civ. 26, 2025 WL 522589 (E.D. Ark. Feb. 18, 2025) ................................... 19

*Johnson v. Activision Blizzard, Inc.*,
No. 24 Civ. 26, 2025 WL 679033 (E.D. Ark. Mar. 3, 2025) ........................................ 8

*Karlin v. UATP Springfield, LLC*,
__ S.W.3d __, 2025 WL 698121 (Mo. Mar. 4, 2025) ............................................. 2, 5, 6

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ....................................................................... 11

*Kramavecky v. Dep't of Social and Health Servs.*,
863 P.2d 535 (Wash. 1993) ........................................................................ 14

*Ligeri v. Amazon.com Inc.*,
No. 23 Civ. 603, 2024 WL 3638241 (D. Conn. Aug. 2, 2024) .................. 3, 16, 17, 18

*Marshall v. Hipcamp Inc.*,
735 F. Supp. 3d 1283 (W.D. Wash. 2024) ........................................... 13, 16, 18

*Mendieta v. Credit Mgmt., L.P.*,
No. 23 Civ. 2512, 2023 WL 6786844 (C.D. Cal. Sept. 19, 2023) ............................. 7

*Mohr v. Grantham*,
262 P.3d 490 (Wash. 2011) ................................................................ 3, 13, 18, 20

*Mundi v. Union Sec. Life. Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ..................................................................... 14

*N.A. v. Nintendo of America Inc.*,
No. 23 Civ. 2424, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) .............................. 7

*Orellana v. Roblox Corp.*,
No. 24 Civ. 762, 2025 WL 694428 (M.D. Fla. Mar. 4, 2025) ................................... 8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ................................................................................ 22

*Rent-A-Center West, Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................................................. 2, 4, 5

*Revitalization Partners, LLC v. Equinix, Inc.*,
No. 16 Civ. 1367, 2017 WL 823291 (W.D. Wash. Mar. 2, 2017) ............................ 20

*Townsend v. Quadrant Corp.*,
268 P.3d 917 (Wash. 2012) .................................................................. 13, 14, 15, 17

**Statutes & Other Authorities:**

Restatement (Third) of Agency § 2.01 (2006) ................................................. 20

iii

# INTRODUCTION

E.V.A. opposes arbitrating her claims against Epic Games by contending that despite playing *Fortnite*, she "[n]ever became a party to the" *Fortnite* End User License Agreement ("EULA"). Answering Brief of Appellee E.V.A. (hereafter "Opp.") at 24. E.V.A. makes this argument despite there being no dispute that Stephanie Allen, her parent, (1) created the Epic Games account in which E.V.A. played *Fortnite*; (2) accepted the EULA, which states that "IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT" (ER-105); and (3) gave E.V.A. access to "play Fortnite using an account" that Ms. Allen attested she "set up with [her] email address" (ER-68 ¶ 3). Accepting E.V.A.'s argument that her gameplay was not subject to the EULA would mean that E.V.A., and by extension other minors playing *Fortnite* in accounts created by their parents, need not follow any of the EULA's rules for gameplay. The argument is much broader than just the EULA's dispute resolution provisions.

E.V.A.'s contention that Ms. Allen's agreement to the EULA does not extend to her is a dispute over the **scope** of the EULA (*i.e.*, whether its definition of arbitrable "Disputes" encompasses E.V.A.'s claims), and the **enforceability** of the EULA against E.V.A. after Ms. Allen agreed to it. The EULA delegates these "gateway" arbitrability issues to the arbitrator. E.V.A. has not disputed that the EULA's delegation provision is "clear and unmistakable," and therefore enforceable. *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (quoting *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475

U.S. 643, 649 (1986)). Nor has E.V.A. asserted any specific challenge to the EULA's arbitration terms or the delegation provision. E.V.A. concedes that if this Court views her challenge as one of the scope or enforceability of the EULA Ms. Allen accepted, controlling precedent confirms that this dispute must be compelled to arbitration. *See* Opp. at 24-25 (citing *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010) (holding that where parties "form[ed] an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance")).

E.V.A. contends this Court should not view the dispute as one of scope or enforceability but rather one of contract **formation**. *See* Opp. at 18-19. The parties agree that disputes over contract formation must be resolved by a court, not an arbitrator. *See id.*; Opening Br. at 4. But this is <u>not</u> a formation dispute because Ms. Allen accepted the EULA in the account to which she gave E.V.A. access. As a state Supreme Court put it earlier this month: if "the factual existence of the [contract] as an agreement that, on its face, can be construed to bind [the minor] to arbitrate his personal injury claim" is not in dispute—as it is not here—the minor's contention that the parent's agreement does not bind him concerns the contract's scope, not its formation. *Karlin v. UATP Springfield, LLC*, ___ S.W.3d ___, 2025 WL 698121, at *4-5 (Mo. Mar. 4, 2025).

Even if this Court treats E.V.A.'s dispute over arbitrability as a matter of contract formation and thus proceeds to determine the merits of the dispute—i.e., whether Ms. Allen's agreement to the EULA binds E.V.A. to arbitrate—the Court should still

reverse the District Court and compel arbitration. Equitable estoppel precludes E.V.A. from avoiding the EULA's terms because her claims arise from her purposeful availment of the EULA's benefits—her *Fortnite* gameplay. E.V.A. <u>concedes</u> that her claims arise from her gameplay, but she wrongly contends that estoppel applies under Washington law only to breach of contract claims, not statutory or tort claims. *See* Opp. at 39. To "knowingly exploit" a contract for purposes of estoppel, however, "does not mean . . . invok[ing] specific terms of the contract," but only that the plaintiff "obtained a direct benefit as a result of the contract," as E.V.A. did. *Ligeri v. Amazon.com Inc.*, No. 23 Civ. 603, 2024 WL 3638241, at *7-8 (D. Conn. Aug. 2, 2024) (applying Washington law). Because E.V.A. obtained such a direct benefit by playing *Fortnite*, and because her claims arise from that gameplay, estoppel applies. If the Court were to hold otherwise, the practical consequence would be that <u>anyone</u>, not just a minor, could avoid the burdens of an online contract simply by asking someone else to click "accept." Cases applying Washington law confirm that estoppel precludes such inequities.

In addition to estoppel, which suffices on its own to require arbitration of E.V.A.'s dispute, Ms. Allen had both apparent and actual authority to accept the EULA as E.V.A.'s agent under Washington law. Epic Games need only show that it had a reasonable basis "to actually, or subjectively, believe that [Ms. Allen] ha[d] the authority to act for [E.V.A.]" in agreeing to the EULA on her behalf. *Mohr v. Grantham*, 262 P.3d 490, 498 (Wash. 2011). Epic Games meets this test because the EULA <u>requires</u> parents to accept it on behalf of minors. Ms. Allen also had actual authority to bind E.V.A.,

consistent with caselaw from around the country confirming that parents can bind their children to arbitration agreements when procuring recreational activities.

Each of these issues—the determination of whether this dispute concerns the scope or enforceability of Ms. Allen's agreement or is a matter of contract formation, and if the latter, whether E.V.A. is bound to arbitrate by equitable estoppel or by Ms. Allen's apparent or actual agency—is ripe for decision on the present appellate record. There is no need to remand the case back to the District Court for determination of additional facts. Tellingly, although E.V.A. urges remand, her brief does not identify a single fact that might emerge which would be outcome determinative of Epic's Motion to Compel. Opp. at 37. The Court should reject that argument as a matter of law.

## ARGUMENT

I.     **This Court Should Delegate E.V.A.'s Arguments About Arbitrability to the Arbitrator.**

The parties agree that the EULA contains a clear and unmistakable—and therefore enforceable—agreement to delegate to the arbitrator any disputes over the EULA's "enforceability" or "scope." *See Brennan*, 796 F.3d at 1130. E.V.A. has mounted no challenge to the EULA's delegation clause specifically. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009-10 (9th Cir. 2023) (challenge to delegation provision must be "specific"). The absence of a specific challenge requires enforcement of the EULA's delegation clause. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 68-69.

To avoid delegation of her dispute to the arbitrator, therefore, E.V.A. must demonstrate that her dispute instead concerns contract <u>formation</u>, which controlling precedent holds must be decided by the court. *See* Opening Br. at 17. But there is no dispute that Ms. Allen accepted the EULA when she created the account in which E.V.A. played. ER-68 ¶ 3. E.V.A. argues that where a parent has agreed to arbitrate disputes, the question of whether the parent's agreement binds a child is a dispute over contract formation, not scope. Opp. at 23. The Florida case E.V.A. cited as supporting her position, however, is materially distinguishable. *See* Opp. at 23 (citing *Global Travel Mktg., Inc. v Shea*, 908 So. 2d 392 (Fla. 2005)). There was no delegation clause at issue in *Shea*, and the case called for the Florida Supreme Court to decide "if the arbitration clause is unenforceable on public policy grounds." *Shea*, 908 So. 2d at 398. Unconscionability of an agreement is an enforceability issue delegable to the arbitrator if the contract has a delegation clause. *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024); Opening Br. at 7-8. Under Supreme Court precedent, therefore, had the *Shea* agreement contained a delegation provision, the dispute would have gone to arbitration. *See Rent-A-Center*, 561 U.S. at 68-69.

That was the result in the recent *Karlin* case, where the Supreme Court of Missouri treated a dispute identical to E.V.A.'s, involving an arbitration agreement with a delegation provision, as a question of scope that must be decided by an arbitrator. The minor plaintiff in *Karlin* did not dispute that "the factual existence of the [contract] as an agreement that, on its face, can be construed to bind [him] to arbitrate his personal

injury claim." *Karlin*, 2025 WL 698121, at *5. Like E.V.A., that plaintiff argued only that his mother lacked authority to bind him to the agreement. *See id.* at *4. Because the court held the dispute <u>not</u> to concern the contract's formation, it determined that the minor "must bring his challenges concerning the validity and scope of the [contract] to the arbitrator." *Id.*

The Seventh Circuit's decision in *Coatney*, on which E.V.A. relied, is distinguishable. *See* Opp. at 33 (citing *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014 (7th Cir. 2024)). In *Coatney*, parents agreed to the defendant's online terms when they purchased analysis kits for their children's DNA. The children sued when the defendant allegedly failed to protect the privacy of their DNA information. On a motion to compel the children to arbitrate their claims, the Seventh Circuit treated the dispute as a matter of contract formation, not scope. Importantly, however, the court reached this conclusion explicitly because the minor plaintiffs derived no benefits from their parents' contracts and because the contracts themselves expressly disclaimed third-party beneficiaries. *See Coatney*, 93 F.4th at 1022.[1] Here, by contrast, the EULA <u>requires</u> adults

---

[1] E.V.A. also cited an earlier Fifth Circuit decision that predated the Supreme Court's more recent arbitration jurisprudence. *See* Opp. at 34 (citing *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002)). *Fleetwood* did not involve a delegation provision, either. Parents and their children were injured by exposure to formaldehyde in a mobile home. The parents' mobile home contract contained an arbitration agreement. The Fifth Circuit held the children were not third-party beneficiaries of the agreement and, therefore, did not have to arbitrate their claims. *See id.* at 1071-1075.

to accept it on behalf of their minor children (ER-104-105), and E.V.A.'s claims arise from her personal enjoyment of the contract's benefits by playing *Fortnite*.

Other cases, including the two district court decisions from this Circuit that Epic Games cited and discussed on pages 19-21 of its opening brief, have compelled disputes like E.V.A.'s to arbitration pursuant to delegation provisions.[2] After Epic Games filed its opening brief, but prior to the date of E.V.A.'s brief, two other district courts ruled in Epic Games' favor on motions to compel arbitration in cases where minors played *Fortnite* in accounts created by or with the assistance of their parents. In *Courtright v. Epic Games, Inc.*, __ F. Supp. 3d __, 2025 WL 558560, at *4-6 (W.D. Mo. Feb. 13, 2025), the minor played in an account the parent assisted in creating. The court held that an Epic Games declaration describing the EULA acceptance process sufficed to demonstrate contract formation. *See id.* The court treated the minor plaintiff's various defenses to arbitrability as matters of scope or enforcement of the EULA that must be decided by an arbitrator. *See id.* On January 27, 2025, in *Ayers v. Epic Games, Inc.*, No. 24 Civ. 64

---

[2] Epic Games' and E.V.A.'s briefs both extensively discussed *Mendieta v. Credit Mgmt., L.P.*, No. 23 Civ. 2512, 2023 WL 6786844 (C.D. Cal. Sept. 19, 2023), and *N.A. v. Nintendo of America Inc.*, No. 23 Civ. 2424, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023). Those are the only cases from within this Circuit applying an "enforceability and scope" delegation provision to one family member's argument against being bound to another family member's agreement to arbitrate. Both disputes were compelled to arbitration, ostensibly pursuant to delegation provisions in the relevant agreements, but in neither case did the district court explain its reasoning. Although Epic Games contends the outcome of these cases was correct—the disputes belonged in arbitration and were sent there—they also highlight the need for this Court to provide clarity as to the standard courts must apply to future such disputes.

(N.D. Fla.), Dkt. No. 162—another case where a parent created an Epic Games account and gave their child access to it—the court applied Florida law and referred to arbitration the minor's arguments that his parent's agreement to the EULA upon creating the account did not bind him.[3]

Epic Games submits these decisions were correct. A dispute cannot concern contract "formation" when, as here, both sides agree the contract was formed between Epic Games and Ms. Allen. If this Court agrees, *Rent-A-Center* controls and requires enforcement of the EULA's delegation clause.

## II. Whether E.V.A. Continued to Play *Fortnite* After She Sued Is Irrelevant to Epic Games' Motion to Compel Arbitration.

Anticipating that the Court will find this dispute to be a delegable matter of contractual scope and enforceability, E.V.A. asks this Court instead to "reject" Epic Games' appeal— without addressing the issues raised—and instead remand the case to the District Court for a summary trial. Opp. at 4, 12-16. That is not necessary or appropriate. The only fact issue the District Court held to be disputed was Epic Games' ability to "ascribe [ongoing, post-complaint] gameplay [in Ms. Allen's account] to

---

[3] E.V.A.' contends that the District Court erred in compelling her co-plaintiffs to arbitrate their identical claims. *See* Opp. at 6-7 n.4. Those plaintiffs played *Fortnite* in accounts they created themselves. Since Epic Games' opening brief, two other courts have reached the same conclusion and compelled minor plaintiffs to arbitrate claims arising from their gameplay in accounts they created. *See Orellana v. Roblox Corp.*, No. 24 Civ. 762, 2025 WL 694428 (M.D. Fla. Mar. 4, 2025); *Johnson v. Activision Blizzard, Inc.*, No. 24 Civ. 26, 2025 WL 679033 (E.D. Ark. Mar. 3, 2025). These additional cases demonstrate that the District Court decided this question correctly.

E.V.A.," as opposed to Ms. Allen or someone else. ER-19. But when (or if) E.V.A. stopped playing *Fortnite* <u>after</u> she sued is irrelevant to whether E.V.A. must arbitrate claims arising from her undisputed <u>pre-suit</u> *Fortnite* gameplay in Ms. Allen's account.

In the case on which E.V.A. premises her request for remand, this Court held that when an <u>outcome-determinative</u> issue remains subject to a fact dispute, it would be wasteful of judicial resources to consider an appeal on the merits. *See* Opp. at 3-4 (discussing *Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667, 671-72 (9th Cir. 2021)). Here, the matter of E.V.A.'s post-complaint gameplay (if any) is not relevant to any outcome-determinative issue on this appeal, and E.V.A. does not argue otherwise. Indeed, although E.V.A.'s brief (at 12) noted the District Court's uncertainty about who continued to play in Ms. Allen's account, E.V.A. did not identify any respect in which this issue is or could be relevant to either side's appellate arguments.

Unable to argue the appellate relevancy of the only "disputed" fact the District Court identified, E.V.A. instead presses for remand based on the District Court's statement that "Defendant, prior to discovery, is in possession of little information regarding when a particular minor is playing on a shared Epic Games account, much less other facts that may be relevant to doctrines of equitable estoppel or agency." Opp. at 41 (quoting ER-19). E.V.A. contends the District Court was "not required to particularize its reasons for seeking a more complete factual record" and that this Court should remand the case for a summary trial of whatever unspecified "other facts" the District Court may have had in mind. *Id.*

9

Yet the section of E.V.A.'s brief about "unresolved fact issues" does not identify <u>any</u> disputed issue that would impact either party's legal arguments—certainly not about whether this dispute concerns contract scope or formation, but also not about application of estoppel or agency. Opp. at 28-42. At most, E.V.A. suggests that Ms. Allen's intentions when she created an Epic Games account—including whether she knew that she might later share it with E.V.A.—may have tangential relevance. *See id.* at 28-29. But Ms. Allen's state of mind when she created her account(s) is not relevant to any legal question before this Court, and Epic Games has not argued otherwise.[4]

E.V.A.'s inability to identify an outcome-determinative issue in dispute contrasts with *Hansen*, where the parties sharply disputed the pivotal question of who (if anyone) accepted the relevant contract. In *Hansen,* the plaintiff (1) denied that he ever visited the defendant's website, and (2) testified that his deceased mother—the only other person who could have accepted the defendant's arbitration agreement—told him before she died that she did not do so, either. *See Hansen*, 1 F.4th at 671. The district court held it could not resolve the motion to compel arbitration without deciding whether the mother or son agreed to the terms, but the court mistakenly entered its decision on the

---

[4] Ms. Allen's declaration stated that E.V.A. "has played Fortnite using an account that [Ms. Allen] set up with [her] email address during the Class Period." ER-68 ¶ 3. E.V.A. faults Epic Games for asserting in its brief that Ms. Allen set up the account for E.V.A. to use. *See, e.g.*, Opp. at 7. Ms. Allen has never contended that she played *Fortnite* herself before or after giving E.V.A. access to the account, but even if she did, that fact would not be relevant to any disputed issue on this appeal.

docket as a "denial" of the motion to compel, from which the defendant appealed. This Court, in turn, held it would be "pointless and wasteful" to address an appeal before the district court found the necessary relevant facts. *Id.* at 673.

Importantly, this Court decided *Hansen* as a matter of prudence, not jurisdiction. *Hansen* stated that Courts of Appeals possess jurisdiction to hear appeals from all denials of motions to compel arbitration, even where district courts should have conducted summary trials instead. *Id.* at 671. *Hansen* did not say a summary trial must occur when, as here, there are no outcome-determinative facts in dispute. The parties here are making purely legal arguments about whether Ms. Allen's undisputed acceptance of the EULA binds E.V.A. to arbitrate her claims arising from her gameplay in Ms. Allen's account.[5]

Epic Games' records reflect that a user of Ms. Allen's accounts accepted the EULA multiple times, including as recently as November 2023. *See* ER-102 ¶ 18. If E.V.A. (and not Ms. Allen) accepted the EULA on <u>any</u> of these occasions, E.V.A.

---

[5] E.V.A.'s brief also cited *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022), which is similarly inapposite. *See* Opp. at 13-14. In *Knapke*, a plaintiff who did not use or benefit from a yearbook database service sued for misappropriation of her name and likeness. Her attorney, while investigating her claims, created an account with the defendant and agreed to its terms of service. The defendant argued that the attorney's agreement bound his client to arbitrate, but this Court held that the appellate record did not show when the plaintiff retained the attorney and the scope of his retention. These matters were relevant to the attorney's authority to bind his client to the defendant's online terms. *See id.* at 834. Here, there is no dispute that Ms. Allen created the account in which E.V.A. played *Fortnite*—and not as part of any litigation investigation.

would occupy the same position as her co-plaintiffs, whom the District Court correctly compelled to arbitrate. *See* ER-6; ER-18 (E.V.A.'s co-plaintiffs must arbitrate because they personally accepted the EULA); *see also Heidbreder v. Epic Games, Inc.*, 438 F. Supp.3d 591, 596-97 (E.D.N.C. 2020) (where parents create Epic Games accounts and give minors "free rein over the account[s]," the minors possess authority to bind themselves and their parents to subsequent versions of the EULA). But even if it was always Ms. Allen who accepted the EULA—as the District Court assumed for purposes of this arbitrability dispute (*see* ER-19), and as this Court also should assume for purposes of deciding this appeal—E.V.A.'s arbitrability dispute is still one over the "scope" of Ms. Allen's agreement. The delegation clause thus requires an arbitrator to decide it.

## III. If the Court Decides This is a Contract Formation Dispute, It Should Still Hold That Ms. Allen's Agreement to the EULA Binds E.V.A. to Arbitrate Her Claims.

As Epic Games demonstrated in its opening brief (at 22-27), the rule in Washington, like most states, is that parents possess authority to bind their children to arbitrate disputes arising from recreational activities. E.V.A. contends that Ms. Allen's agreement to the EULA should not bind her because "there is no evidence that Ms. Allen set up her *Fortnite* account" with an immediate intent that the account would be "for E.V.A.'s benefit (as opposed to her own benefit, or that of her other child, M.A.)." Opp. at 35. None of the cases holding parents possess authority to bind their children to arbitrate, however, turned on the timing of the parent's agreement, relative to when the parent accorded the benefit of the agreement to the child. *See* Opening Br. at 22-27.

12

Nor did any court require the defendant to prove what was in the parent's mind at the time of the agreement. *Id.* These courts correctly found the minors were bound because (1) they received the benefits of the contracts and therefore were estopped from avoiding the contracts' dispute resolution provisions, and (2) parents possess both apparent and actual authority to bind their children to arbitrate. *See, e.g., Marshall v. Hipcamp Inc.*, 735 F. Supp. 3d 1283, 1295 (W.D. Wash. 2024); *Mohr*, 262 P.3d at 498. The same holds true for E.V.A., without any need for additional fact-finding.

> ### A. Equitable estoppel prevents E.V.A. from avoiding arbitration of disputes arising from her gameplay in Ms. Allen's account.

Because E.V.A.'s claims arise from her *Fortnite* gameplay in Ms. Allen's account, Washington state principles of equitable estoppel preclude E.V.A. from disputing that she is bound by the EULA's requirement to arbitrate those claims.[6] In response, E.V.A. argued that estoppel applies only where a plaintiff asserts claims for breach of a contract, not where "the non-signatory brings claims that 'sound in tort and allege personal injuries.'" Opp. at 36 (quoting *Townsend v. Quadrant Corp.*, 268 P.3d 917, 924 (Wash. 2012) (Stephens, J.)). That argument misstates *Townsend* and other cases construing Washington equitable estoppel law. Estoppel applies not just when a non-signatory asserts a breach of contract, but also where that person "claim[s] the benefits

---

[6] As E.V.A.'s brief (at 20 n.13) notes, the EULA contains a North Carolina choice of law provision that would govern her substantive claims if she is bound to the EULA. For purposes of determining whether she is bound to the EULA, however, Washington law applies as the state where Ms. Allen and E.V.A. resided at the relevant times.

of a contract while simultaneously attempting to avoid the burdens [it] imposes." *Mundi v. Union Sec. Life. Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (internal quotations marks and citation omitted). *See also Townsend*, 268 P.3d at 922 (same).

E.V.A. alleges that Epic Games improperly collected information <u>about her</u> *Fortnite* gameplay, <u>while</u> she played. ER-139-140.[7] E.V.A.'s Complaint does not contend that Epic Games collected information about anyone other than the player or that Epic Games collected information about the player at times other than during active gameplay. This distinguishes E.V.A.'s claims from those in the cases she relies upon, where the plaintiffs' claims arose not because they intentionally availed themselves of the benefits of a contract, but simply because they were in proximity to the cause of their injuries.. Here, not only did Ms. Allen give E.V.A. the opportunity to play *Fortnite* in the account Ms. Allen created, but E.V.A. chose to play *Fortnite*.

---

[7] E.V.A.argues that the nature of her allegations suggest Epic Games has "unclean hands" and therefore should not be able to rely on principles of equitable estoppel "to burden E.V.A. with a duty to arbitrate." Opp. at 40. But the case and premise E.V.A. cites states that "[a] party may not base a claim of estoppel on conduct, omissions, or representations induced by his or her own conduct, concealment, or representations." *Kramavecky v. Dep't of Social and Health Servs.*, 863 P.2d 535, 538 n.1 (Wash. 1993). E.V.A. does not and cannot allege that Epic Games induced Ms. Allen to accept the EULA based on its conduct, concealment, or representations. E.V.A. cites no cases, and Epic Games has found none, holding that applying estoppel to one who knowingly exploited the benefits of a contract, and who asserts claims arising from her use of those benefits, depends on the subject or substance of the plaintiff's allegations. If that were the law, it would be essentially impossible for any defendant to assert estoppel. By definition, every plaintiff asserts that the defendant did something wrong.

This distinguishes E.V.A.'s claim from those of the minors in *Townsend*. There, homeowners who signed arbitration agreements with homebuilders sued in tort—along with their children who were not signatories to the contracts—for "shoddy workmanship . . . that caused personal injuries relating to mold, pests, and poisonous gases." *Townsend*, 268 P.3d at 919. All nine Justices of the Washington Supreme Court agreed that "a party who knowingly exploits a contract for benefit cannot simultaneously avoid the burden of arbitrating." *Id.* at 923. While acknowledging that principle, a five-Justice majority held that the minor plaintiffs' occupancy of the homes, and being passively exposed to toxic substances while residing there, did not constitute knowing exploitation of the benefits of the homebuilding contracts. *See id.* at 924.

Similarly, in *B.F. v. Amazon.com Inc.*, the claim was that Amazon "Alexa" devices improperly recorded the voices of everyone within the range of the devices' microphones. 858 F. App'x 218, 220 (9th Cir. 2021). The same violation-of-privacy claim B.F. alleged could have been raised by a transient visitor to the home whose voice the devices allegedly recorded, too. *See id.* at 221 ("Amazon would owe to Plaintiffs the legal duty that Plaintiffs claim has been violated" regardless of their relationship to the persons who accepted the arbitration agreement). For that reason, this Court held that the minor plaintiffs did not have to arbitrate because their claims did not arise from any knowing exploitation of the benefits of the Alexa terms of use.

E.V.A. is situated differently from the plaintiffs in *B.F.* and *Townsend* because her claims arise directly from her knowing, affirmative exploitation of the benefits of the

15

EULA: choosing to play *Fortnite* in the account her mother created. E.V.A. would not have a claim if she had not played *Fortnite*, and she only had the ability to play because Ms. Allen established an account and accepted the EULA. Both the majority and minority Justices' views as stated in *Townsend* would hold equitable estoppel to apply to E.V.A.'s claims, and nothing in *B.F.* is to the contrary.

The facts of E.V.A.'s case parallel those in another case Epic Games cited, *Marshall*, 735 F. Supp. 3d at 1283; Opening Br. at 28-29. Seeking to distinguish *Marshall*, E.V.A.'s brief quoted one sentence of a footnote in the decision stating that "[c]ourts applying Washington law have determined that equitable estoppel does not apply where plaintiffs bring claims based on statutory rights, rather than rights under the contract." Opp. at 38 n.24 (quoting *Marshall*, 735 F. Supp. 3d at 1295 n.3). But the very next sentence stated why the *Marshall* plaintiff had to arbitrate his non-contract claims: the plaintiff could not have suffered his alleged injuries but for his exploitation of the benefits of his girlfriend's contract to camp on the defendant's property. Put another way, "[t]he plaintiff in [*Marshall*] . . . was held to have benefitted from a contract for campsite booking services despite subsequently falling 80 feet at the campsite itself and sustaining serious injuries." *Ligeri*, 2024 WL 3638241, at *8. Just as the *Marshall* plaintiff would not have had tort claims but for having been allowed on the campsite pursuant to his girlfriend's agreement, E.V.A. would not have her claims in this case had she not purposely availed herself of the benefits of the EULA by playing *Fortnite*. As in *Marshall* and *Ligeri*, which held squarely that one cannot exploit the benefits of a contract and

16

avoid the contract's dispute resolution terms, E.V.A.'s claims arise directly from an act she could not have performed without availing herself of the benefits of the contract to which Ms. Allen agreed.

No relevant facts are in dispute preventing this Court from applying estoppel. In arguing for further fact-finding, E.V.A. cites *Ligeri*, which applied Washington law, and asserts that the *Ligeri* court held an evidentiary hearing before making a finding of estoppel. *See* Opp. at 38 n.24 (*citing Ligeri*, 2024 WL 3638241, at *4-9). Not so. That court did conduct a hearing to determine whether the plaintiffs—buyers of Amazon seller accounts they did not create—were on inquiry notice of the online terms the creators of those accounts accepted. But the court separately decided, without regard to facts found at the hearing, that estoppel also bound the plaintiffs to arbitrate. *Ligeri*, 2024 WL 3638241, at *7 (quoting *Townsend*, 268 P.3d at 922) ("Unlike inquiry notice, which is bound up with assent, equitable estoppel is an exception to the usual contract rules" which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens the contract imposes."). As that court held, and as is equally true here, "the phrase 'knowingly exploits' does not mean the non-signatory's claims invoke specific terms of the contract," but requires only that the non-signatory "obtained a direct benefit as a result of the contract." *Id.* at *7-8. E.V.A. similarly "obtained a direct benefit" by playing *Fortnite* in her mother's account.

Stated succinctly, the reason E.V.A. must arbitrate her claims (like the *Ligeri* and *Marshall* plaintiffs), while the minor plaintiffs in *B.F.* and *Townsend* did not, is that

E.V.A.'s claims about collection of her personal information while she played *Fortnite* would not exist but for her intentional enjoyment of the benefits of the EULA. The same is not true of the plaintiffs in *B.F.*, whose voices allegedly were recorded simply because of their proximity to the Alexa devices without regard to any intention to use them, or the plaintiffs in *Townsend*, whose injuries due to the defendants' alleged negligence could just as easily have been suffered by a subsequent purchaser rather than the children of the original owners. The courts in *Ligeri* and *Marshall* stated this expressly as the reason why they distinguished those cases from *Townsend* and *B.F. See Marshall*, 735 F. Supp. 3d at 1294-95 & n.3 (distinguishing *Townsend* and *B.F.* because those plaintiffs' non-contract claims arose from purposeful availment of the contract's benefits); *Ligeri*, 2024 WL 3638241, at *7-8 (distinguishing *Townsend* on the same basis). As a matter of Washington law, therefore, equitable estoppel binds E.V.A. to arbitrate.

### B. Ms. Allen also bound E.V.A. to arbitrate as E.V.A.'s apparent and actual agent.

For Epic Games to succeed on its argument that Ms. Allen had apparent authority to bind E.V.A. to the EULA, it need only show that it had a reasonable basis "to actually, or subjectively, believe that [Ms. Allen] ha[d] the authority to act for the [E.V.A.]" in agreeing to the EULA on her behalf. *Mohr*, 262 P.3d at 498; *see* Opening Br. at 23. Epic Games clears that bar given the EULA's prominent, all-capitalized text at its outset requiring parental acceptance. *See* ER-105.

18

After accurately reciting the legal standard for apparent authority in Washington, E.V.A. did no more than deny in bare terms that Epic Games met the standard based on the evidence in the District Court record. *See* Opp. at 29. E.V.A. acknowledged some of the cases Epic Games cited (but ignored others) in which courts found minors to be bound by their parents' agreement to arbitrate. *See id.* at 30-31. E.V.A. argued that agency determinations have the potential to be "fact-intensive" (*id.* at 31), but her brief did not identify any relevant fact dispute here, and there is none.

Additionally, in a case decided after Epic Games submitted its opening brief, the court compelled arbitration under circumstances mirroring E.V.A.'s. *See Johnson v. Activision Blizzard, Inc.*, No. 24 Civ. 26, 2025 WL 522589 (E.D. Ark. Feb. 18, 2025). In *Johnson*, a minor accepted a video game license agreement containing an arbitration requirement, affirming that his parent or guardian had reviewed the agreement and consented. *See id.* at *4. That affirmation sufficed to bind not just the minor, but also his parent, on principles of apparent authority: "There was no reason for the Activision Defendants to question whether the user of the account was anyone other than Johnson who was either over the age of 18 or was acting with the consent of his parent or guardian." *Id.* As the child bound the parent in *Johnson* as a matter of apparent authority, the parent bound the child in E.V.A.'s case.

Because Ms. Allen created a *Fortnite* account and gave E.V.A. access to it, Epic Games had a reasonable basis to believe that Ms. Allen possessed authority to act for E.V.A. when she agreed to the EULA before giving E.V.A. access to that account.

*Mohr*, 262 P.3d at 498. Nothing else is needed for a finding of apparent authority, which suffices on its own to bind E.V.A. to arbitrate.

As a separate basis to compel arbitration, Ms. Allen also had <u>actual</u> authority to bind E.V.A. to the EULA when she gave E.V.A. access to her account to play *Fortnite*. The parties agree on the relevant standard: "Actual authority exists where 'at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act.'" *Revitalization Partners, LLC v. Equinix, Inc.*, No. 16 Civ. 1367, 2017 WL 823291, at *4 (W.D. Wash. Mar. 2, 2017) (quoting Restatement (Third) of Agency § 2.01 (2006)); Opp. at 30; Opening Br. at 23. E.V.A. argues that Epic Games cannot compel E.V.A. to arbitrate on this theory without being able to prove whether, at the time Ms. Allen created an account with Epic Games, she knew E.V.A. would use the account. *See* Opp. at 29. But, for purposes of determining whether Ms. Allen acted as E.V.A.'s agent, the relevant "time of taking action that has legal consequences for the principal" was the moment Ms. Allen gave E.V.A. access to the account. *Revitalization*, 2017 WL 823291, at *4. By doing so, she facilitated E.V.A.'s ability to play *Fortnite* in the manner the EULA allows—by accepting the EULA on E.V.A.'s behalf as her parent. Whether Ms. Allen had E.V.A.'s future gameplay in mind when she created the account has no impact on the issue of agency.

As Epic Games demonstrated in its opening brief (at 26-27), when state Supreme Courts have opined on parents' authority to bind their children to agreements to

20

arbitrate claims arising from recreational activities, those courts have required children to arbitrate. E.V.A.'s only response to these cases was to note that none applied Washington law. *See* Opp. at 33 & n.21. E.V.A. cited nothing, however, to suggest that Washington would apply agency principles any differently than (for example) New York, New Jersey, Florida, or Texas. *See* Opp. at 33 & n.21. As supposedly contrary precedent, E.V.A. resorted once again to the Seventh Circuit's decision in *Coatney*, where the court held that parents' acceptance of an arbitration agreement did not bind their children, who derived no benefits from the agreement. *See id.* In *Coatney*, however, the agreement the parents executed stated the DNA test-kit agreement was "personal" to the signatory and explicitly non-transferable. *Coatney*, 93 F.4th at 1020. For that reason, the Seventh Circuit explicitly distinguished a case where the relevant agreement expressly said the parent accepted dispute resolution terms on behalf of the minor child. *See id.* at 1021 (distinguishing *Burns v. Wilderness Ventures, Inc.*, No. 12 Civ. 4188, 2012 WL 3779069 (N.D. Ill. Aug. 30, 2012), because "Ancestry's Terms do not say plaintiff's guardians agreed to them 'on behalf of' their children"). The EULA here not only contemplates, but <u>requires</u>, parental acceptance.

## IV. Whether the EULA's Arbitration Requirement Applies To Claims Arising Before the Effective Date of the Arbitration Provision Is a "Scope" Dispute That Must Be Delegated to the Arbitrator.

Ms. Allen created her Epic Games accounts and accepted the EULA for the first time in late 2017 (ER-102 ¶ 18), but Epic Games did not add an arbitration requirement to the EULA until March 2019. ER-99 ¶ 5. Epic Games required all *Fortnite* players to

accept the new EULA with the arbitration provision in March 2019 before they could continue to play. *See* ER-99-100 ¶¶ 5-7. A user of each of Ms. Allen's accounts accepted the new EULA on March 15 and 16, 2019. *See* ER-102 ¶ 18.

E.V.A. contends that even if this Court compels her claims to arbitration, any claims of hers that accrued prior to Epic Games' adoption of the arbitration agreement in March 2019 would not be arbitrable. *See* Opp. at 22. This argument is a red herring. The Complaint does not specify when E.V.A. began playing, but even if E.V.A. possesses claims that arose prior to March 2019, questions of whether those claims are subject to tolling or whether the arbitration agreement applies to them are matters of "scope" that can be—and, in the EULA, are—delegated to the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398-99 (1967) (arbitration agreement encompassed claims of fraudulent misrepresentation occurring prior to agreement); *Allbaugh v. Perma-Bound*, No. 08 Civ. 5713, 2009 WL 10676437, at *9 (W.D. Wash. Aug. 14, 2009) (arbitration agreement applied to "any claims that relate to her economic relationship with Defendant, regardless of when the underlying events occurred"). E.V.A. cites no cases supporting her assertion that any claims she could assert from that time would not be arbitrable.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Epic Games' opening brief, Epic Games respectfully requests that the Order of the District Court denying its Motion to Compel Arbitration be REVERSED.

Dated: March 25, 2025           Respectfully Submitted,

FAEGRE DRINKER
BIDDLE & REATH LLP
Jeffrey S. Jacobson
Paul A. Rosenthal


By <u>/s/ Jeffrey S. Jacobson</u>
            Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellant states that it is unaware of any related case(s) that is currently pending before this Court.

Dated: March 25, 2025                 Respectfully Submitted,

FAEGRE DRINKER
BIDDLE & REATH LLP
Jeffrey S. Jacobson

By <u>/s/ Jeffrey S. Jacobson</u>
            Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Ninth Circuit Rule 32-1(b) because it contains 6,341 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond.

Dated: March 25, 2024               Respectfully Submitted,

FAEGRE DRINKER
BIDDLE & REATH LLP
Jeffrey S. Jacobson
Paul A. Rosenthal

By /s/ Jeffrey S. Jacobson
       Jeffrey S. Jacobson

*Attorneys for Defendant-Appellant*

**CERTIFICATE OF SERVICE WHEN**
**ALL CASE PARTICIPANTS ARE CM/ECF PARTICIPANTS**

U.S. Court of Appeals for the Ninth Circuit Docket Number: 24-6443

I hereby certify that I electronically filed the foregoing Reply Brief of Defendant-Appellant Epic Games, Inc. with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 25, 2025.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 25, 2025                    Respectfully Submitted,

                                         FAEGRE DRINKER
                                         BIDDLE & REATH LLP
                                         Jeffrey S. Jacobson

                                         By /s/ Jeffrey S. Jacobson
                                             Jeffrey S. Jacobson

                                         *Attorneys for Defendant-Appellant*